1   Alan J. Friedman (State Bar No. 132580)
    afriedman@irell.com
2   Kerri A. Lyman (State Bar No. 241615)
    klyman@irell.com
3   IRELL & MANELLA LLP
    840 Newport Center Drive, Suite 400
4   Newport Beach, California 92660-6324
    Telephone: (949) 760-0991
5   Facsimile: (949) 760-5200

6   *Attorneys for AP-Long Beach Airport LLC*

7

8

9            **UNITED STATES BANKRUPTCY COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11               **LOS ANGELES DIVISION**

| | |
|---|---|
| 12   In re | Case No. 2:14-bk-33372-VZ |
| 13   AP-LONG BEACH AIRPORT LLC, a | Chapter 11 Case |
|     Delaware limited liability company, | |
| 14 | **MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING POSTPETITION FINANCING** |
| 15        Debtor and Debtor-in- | |
|           Possession. | **PURSUANT TO SECTION 364 OF THE** |
| 16 | **BANKRUPTCY CODE, (B) GRANTING LIENS TO POSTPETITION LENDER** |
| 17 | **PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, AND (C)** |
| 18 | **AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO** |
| 19 | **SECTION 363 OF THE BANKRUPTCY CODE; MEMORANDUM OF POINTS** |
| 20 | **AND AUTHORITIES; DECLARATION OF DONALD G. ABBEY IN SUPPORT** |
| 21 | **THEREOF** |
| 22 | |
| 23 | Hearing: |
| 24 | Date: February 24, 2015 |
| | Time: 1:45 p.m. |
| 25 | Place: Courtroom 1368 |
| 26 | |

27

28

3240353.8

                   MOTION FOR ORDER RE POSTPETITION FINANCING;
                            MEMORANDUM OF POINTS
                 AND AUTHORITIES IN SUPPORT THEREOF

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

SUMMARY .................................................................................................... 3

NOTICE ........................................................................................................ 9

I.    STATEMENT OF FACTS ......................................................................... 12

    A.    The Chapter 11 Filing ................................................................... 12

    B.    Overview of the Debtor's Business ................................................ 12

    C.    The Long Beach Property .............................................................. 13

    D.    The U.S. Bank Loan ..................................................................... 13

    E.    The Postpetition Financing ........................................................... 14

    F.    Summary of Terms ....................................................................... 17

II.   DISCUSSION ....................................................................................... 22

    A.    The Standard for Obtaining Secured Credit Pursuant to 11 U.S.C. §
        364. ............................................................................................ 22

    B.    The Debtor's Use of Cash Collateral is Permissible Under Section
        363 of the Bankruptcy Code .......................................................... 25

    C.    The Procedural Requirements Regarding Approval of this Motion
        Have Been Satisfied. .................................................................... 26

III.  CONCLUSION ..................................................................................... 28

**TABLE OF AUTHORITIES**

**Page(s)**

Cases

In re Ames Dept. Stores, Inc.,
        115 B.R. 34 (Bankr. S.D.N.Y. 1990) ................................................. 22, 24, 25

In re Aqua Assoc.,
        123 B.R. 192 (Bankr.E.D.Pa.1991) ....................................................... 23

In re Defender Drug Stores,
        126 B.R. 76 (Bankr. D. Ariz. 1991) ...................................................... 23

In re Ellingsen MacLean Oil Co.,
        834 F.2d 599 (6th Cir. 1987) ................................................................ 23

In re Grouse Group, Inc.,
        71 B.R. 544 (Bankr.E.D.Pa.1987) ......................................................... 23

In re Photo Promotion Associates. Inc.,
        87 B.R. 835 (Bankr. S.D.N.Y. 1988), aff'd, 881 F.2d 6 (2d. Cir. 1989) ................... 22, 23

In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir.1986) ........................................... 24

In re Southern Soya. Corp.,
        251 B.R. 302 (Bankr. D.S.C. 2000) ......................................................... 22

In re T.M. Sweeney & Sons LTL Services. Inc.,
        131 B.R. 984 (Bankr. N.D.I11. 1991) ....................................................... 22

Resolution Trust Corp. v. Official Unsecured Creditors Com. (In re Defender Drug
        Stores. Inc.),
        145 B.R 312 (9th Cir. B.A.P. 1992) ........................................................ 23

Richmond Leasing Co. v. Capital Bank N.A.,
        762 F.2d 1303 (5th Cir. 1985) ............................................................. 25

Statutes

11 U.S.C. § 101 et seq. .......................................................................... 1, 12

11 U.S.C. § 105 ...................................................................................... 1

11 U.S.C. § 1107 .................................................................................. 3, 12

11 U.S.C. § 1108 .................................................................................. 3, 12

11 U.S.C. § 361 ...................................................................................... 1

11 U.S.C. § 363 ........................................................................... 1, 5, 18, 25

11 U.S.C. § 363(c) ................................................................................ 8, 21

11 U.S.C. § 363(c)(2) ............................................................................ 25, 26

**Page(s)**

11 U.S.C. § 363(c)(2)(B) ................................................................................ 7, 19

11 U.S.C. § 363(e) ..................................................................................................... 25

11 U.S.C. § 364 .................................................................................................. passim

11 U.S.C. § 364(a) ..................................................................................................... 24

11 U.S.C. § 364(b) .............................................................................................. 23, 24

11 U.S.C. § 364(c) ................................................................................... 8, 20, 22, 23

11 U.S.C. § 364(c)(l) .............................................................................................. 4, 16

11 U.S.C. § 364(d) ......................................................................................... 8, 20, 23

11 U.S.C. § 503(b) ..................................................................................................... 22

11 U.S.C. § 503(b)(1) ................................................................................................. 22

11 U.S.C. § 503(b)(1)(A) ........................................................................................... 23

11 U.S.C. § 503(b)(2) ................................................................................................. 23

11 U.S.C. § 506(c) ............................................................................................. passim

11 U.S.C. § 507(b) ..................................................................................................... 22

11 U.S.C. § 544 .................................................................................... 7, 9, 19, 21

11 U.S.C. § 545 .................................................................................... 7, 9, 19, 21

11 U.S.C. § 547 .................................................................................... 7, 9, 19, 21

11 U.S.C. § 548 .................................................................................... 7, 9, 19, 21

11 U.S.C. § 549 .................................................................................... 7, 9, 19, 21

11 U.S.C. § 553(b) ............................................................................................... 9, 21

11 U.S.C. § 723(a) ............................................................................................... 9, 21

11 U.S.C. § 724(a) ............................................................................................... 9, 21

28 U.S.C. § 1334 ....................................................................................................... 12

28 U.S.C. § 1408 ....................................................................................................... 12

28 U.S.C. § 1409 ....................................................................................................... 12

28 U.S.C. § 157 ......................................................................................................... 12

MOTION FOR ORDER RE POSTPETITION FINANCING;
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

**Page(s)**

28 U.S.C. § 157(b)(2) ................................................................................................. 12

**Rules**

Bankruptcy Rule 4001(b)(1)(B) ............................................................................. 8, 20

Bankruptcy Rule 4001(c)(1)(B) ............................................................................. 8, 20

Federal Rules of Bankruptcy Procedure Rule 2002 .................................................... 1

Federal Rules of Bankruptcy Procedure Rule 4001 ........................................ 9, 10, 27

Federal Rules of Bankruptcy Procedure Rule 4001(b) ............................................... 1

Federal Rules of Bankruptcy Procedure Rule 4001(c) .......................................... 1, 26

Federal Rules of Bankruptcy Procedure Rule 9014 ................................................... 1

Local Bankruptcy Rule 2081-1(a)(9) .......................................................................... 1

Local Bankruptcy Rule 4001-2 ................................................................................... 1

Local Bankruptcy Rule 4001-2(b) .......................................................................... 6, 18

Local Bankruptcy Rule 4001-2(c) ............................................................................. 17

Local Bankruptcy Rule 4001-2(d) .......................................................................... 6, 18

Local Bankruptcy Rule 9075-1 ................................................................................... 1

MOTION FOR ORDER RE POSTPETITION FINANCING;
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1    TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES

2  BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE

3  TWENTY LARGEST UNSECURED PARTIES, AND INTERESTED PARTIES:

4    Pursuant to sections 105, 361, 363, and 364 of title 11 of the United States Code, sections

5  101 et seq. (the "Bankruptcy Code"), Rules 2002, 4001(b) and (c), and 9014 of the Federal Rules

6  of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2081-1(a)(9), 4001-2, and 9075-1

7  of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of

8  California (the "Local Rules"), AP-Long Beach Airport, LLC (the "Debtor"), the debtor and

9  debtor in possession in the above-captioned chapter 11 bankruptcy case, hereby moves on this

10 *Motion for Interim and Final Orders (A) Authorizing Postpetition Financing Pursuant to Section*

11 *364 of the Bankruptcy Code, (B) Granting Liens to Postpetition Lender Pursuant to Section 364 of*

12 *the Bankruptcy Code, and (C) Authorizing Use of Cash Collateral Pursuant to Section 363 of the*

13 *Bankruptcy Code* (the "Motion"), for entry of an interim and final order authorizing the Debtor to

14 borrow and use $40,500,000 on the terms set forth herein.  In support of this Motion, the Debtor

15 relies on the Motion, the Memorandum of Points and Authorities in Support of the Motion, the

16 declaration of Donald G. Abbey (the "Abbey Declaration"), the separately filed notice of Motion,

17 Statement Pursuant to LBR 4001-2 Regarding Cash Collateral, the Declaration of David Blitz, the

18 statements, arguments, and representations of counsel to be made at the hearing on the Motion,

19 and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

20                              **PRELIMINARY STATEMENT**

21    The Debtor is a single asset real estate company that owns a 206,945-square-foot building

22 at Long Beach Airport located at 3205 Lakewood Boulevard, Long Beach, California (the "Long

23 Beach Property") that originally was an airplane hangar.  The Debtor filed its Chapter 11 petition

24 on December 19, 2014, on the eve of a non-judicial foreclosure action by U.S. Bank National

25 Association ("U.S. Bank"), the Debtor's prepetition lender, to foreclose on the Long Beach

26 Property.  As of the Petition Date, the Debtor owed U.S. Bank approximately $33.7 million plus

27 unpaid interest and fees on account of its secured loan.

28

Pursuant to a stipulation entered into between the Debtor and U.S. Bank immediately following the Chapter 11 filing, and subsequently approved by the Court, the Debtor consented to the lifting of the automatic stay to enable U.S. Bank to foreclose upon the Long Beach Property. In exchange, U.S. Bank consented to the Debtor's use of cash collateral and agreed to forbear from such foreclosure provided that the U.S. Bank Loan (as defined below) was repaid on or before March 1, 2015. Entering into this stipulation also allowed the Debtor to focus its efforts on locating new financing to replace the U.S. Bank Loan as opposed to litigating issues with U.S. Bank.

Since the commencement of this Chapter 11 case, the Debtor redoubled its efforts (which were begun several months prepetition) on locating financing to repay the U.S. Bank Loan and has spoken to numerous potential financing sources. In late January, the Debtor engaged Mount Nebo Capital, Inc. ("Nebo") to assist in locating a source of financing to pay off the U.S. Bank Loan. Given the tight timeline for obtaining new financing and avoiding the foreclosure of the Long Beach Property, Nebo contacted eight potential lenders who, based on Nebo's experience, would be receptive to non-standard transactions with short time frames. Two interested parties submitted term sheet offers, but neither materialized into a viable offer.

Fortunately, late on Friday, February 13, 2015, the Debtor's efforts to obtain financing bore fruit and the Debtor entered into a term sheet with Macquarie Bank Limited (or an affiliate thereof, the "Postpetition Lender") for $40,500,000 in new, postpetition financing (the "Postpetition Financing"). The Postpetition Lender has not yet obtained all required internal approvals to commit to the Postpetition Financing, but is working diligently to do so. The financing provided by the Postpetition Lender, if approved, will accomplish the primary objective of this Chapter 11 case and allow the Debtor to pay off the U.S. Bank Loan, avoid the foreclosure of the Long Beach Property, and provide for the payment of unsecured creditors.

The Debtor believes that approval of the Postpetition Financing is in the best interests of the Debtor's creditors. Entering into the Postpetition Financing will allow the Debtor to pay U.S. Bank's prepetition secured claim in full, and funds will continue to be reserved by the Receiver for the payment of unsecured claims (as well as UST fees). Additionally, as part of the Postpetition

1  Financing, the Postpetition Lender has consented to the Debtor's use of cash collateral to pay for

2  postpetition expenses in the ordinary course of business.  Thus, approval of the Postpetition

3  Financing will avoid any disruption in the Debtor's operations and therefore is in the best interests

4  of the Debtor's creditors and its estate.

5                                              **SUMMARY**

6          The Debtor is a property-level subsidiary in a business enterprise with The Abbey

7  Companies LLC ("ABLLC") as the most senior corporate entity, which was founded in 1990 by

8  Donald G. Abbey ("Mr. Abbey").

9          The Debtor filed for chapter 11 bankruptcy protection on December 19, 2014 (the "Petition

10  Date").  The Debtor continues to operate its business, manage its financial affairs, and manage its

11  bankruptcy estate as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy

12  Code.[1]

13          Prepetition, the Debtor was the borrower under that certain Construction Loan Agreement

14  with U.S. Bank in the principal amount of $37,764,469 (as amended, restated, supplemented, or

15  otherwise modified from time to time, the "U.S. Bank Loan"), secured by a construction deed of

16  trust and assignment of leases and rents on the Long Beach Property.  As of the Petition Date, the

17  Debtor owed approximately $33.7 million plus unpaid interest and fees under the U.S. Bank Loan.

18  Mr. Abbey personally guaranteed the obligations under the U.S. Bank Loan.

19          On August 11, 2014, U.S. Bank filed a complaint in the Superior Court of the State of

20  California for the County of Los Angeles, Southern District against the Debtor and Mr. Abbey

21  seeking, among other things, the appointment of a receiver and to foreclose on the Long Beach

22  Property (the "U.S. Bank Litigation").

23          Shortly before the commencement of the Chapter 11 Case and on the eve of a non-judicial

24  foreclosure sale of the Long Beach Property, the Debtor and Mr. Abbey entered into a

25  _____

26          [1] On August 15, 2014, the state court appointed a receiver for the limited purpose of
27  collecting rents on behalf of U.S. Bank at the Long Beach Property (as his role was modified from
time to time, the "Receiver").  The Debtor has worked cooperatively with the Receiver since his
28  appointment to ensure that the value of the Long Beach Property is not impaired as a result of his
appointment.

1  comprehensive agreement (the "U.S. Bank Agreement") with U.S. Bank. The U.S. Bank

2  Agreement provides the Debtor until March 1, 2015, to repay the U.S. Bank Loan through a

3  refinancing or sale of the Debtor's assets. Pursuant to the U.S. Bank Agreement, the Debtor and

4  U.S. Bank entered into a stipulation shortly after the Petition Date (the "U.S. Bank Stipulation"),

5  which was approved, as modified by the Bankruptcy Court, pursuant to an Order entered February

6  2, 2015. Among other things, the U.S. Bank Stipulation provided for the lifting of the automatic

7  stay set forth in section 362 of the Bankruptcy Code to enable U.S. Bank to foreclose upon the

8  Long Beach Property. U.S. Bank, however, agreed to forbear from such foreclosure provided that

9  the U.S. Bank Loan was repaid on or before March 1, 2015.

10      By this Motion, the Debtor seeks authorization to enter into a financing arrangement with

11  the Postpetition Lender. This financing will accomplish the primary objective of this Chapter 11

12  case and allow the Debtor to pay off the U.S. Bank Loan and avoid the foreclosure of the Long

13  Beach Property. Both prior to and following the Petition Date, the Debtor has worked diligently

14  to obtain financing to avoid a foreclosure of the Long Beach Property. The Debtor has

15  investigated financing from several sources and has not been able to acquire financing on terms

16  more favorable than those offered by the Postpetition Lender, which terms have been negotiated in

17  good faith and at arms' length. It is the Debtor's reasonable business judgment that the proposed

18  financing is in the best interest of the estate and necessary to avoid immediate and irreparable

19  harm.

20      The proposed Postpetition Financing is a single draw loan in the amount of $40,500,000, at

21  10% interest (of which 6% will be paid current and the remainder will accrue). The Postpetition

22  Financing will provide the Debtor with sufficient funds to pay the U.S. Bank Loan in full, as well

23  as establish a $3,000,000 reserve to pay costs associated with new leases at the Long Beach

24  Property, and will convert to exit financing upon confirmation of a plan of reorganization. The

25  Postpetition Financing will be secured by a first priority perfected security interest in all of the

26  Debtor's unencumbered assets and a junior perfected security interest in all of the Debtor's

27  encumbered assets, including all real and personal property, will be entitled to superpriority

28  administrative priority pursuant to 11 U.S.C. § 364(c)(l), and the Postpetition Lender's liens and

MOTION FOR ORDER RE POSTPETITION FINANCING;
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1  administrative priority claim will remain in full force and effect notwithstanding any subsequent

2  conversion or dismissal of the case.

3       Mr. Abbey has agreed to guaranty certain of the Debtor's liabilities[2] and issue an

4  environmental indemnity.  In addition, Mr. Abbey will make a payment to the Postpetition Lender

5  no later than ten days following the closing of the Postpetition Financing (the "Mandatory

6  Prepayment").  This Mandatory Prepayment will be applied against the Postpetition Financing as a

7  prepayment of principal.

8       The full terms of the Postpetition Financing are set forth in the documents attached to the

9  Abbey Declaration, including but not limited to the Proposed Order attached as Exhibit "A"

10  thereto (the proposed order with all exhibits, the "Postpetition Financing Documents").  Creditors

11  and parties in interest wishing to know the specific terms of the financing should read Exhibit "A"

12  to the Abbey Declaration.  To the extent that there are any inconsistencies or uncertainties between

13  the terms in the Postpetition Financing Documents and this Motion, the terms in the Postpetition

14  Financing Documents control.

15       In addition to seeking authorization to enter into the Postpetition Financing, the Debtor

16  also seeks authority pursuant to section 363 of the Bankruptcy Code to utilize the Postpetition

17  Lender's cash collateral on the terms set forth in the Postpetition Financing Documents.  The

18

19

---

20     [2] The guaranteed liabilities include, without limitation, environmental matters, intentional misrepresentation, misappropriation of funds (including proceeds paid under any insurance
21  policies or condemnation proceedings, rents and security deposits), fraud, waste, failure by the Debtor to purchase a replacement rate cap in accordance with the Postpetition Financing
22  documents, any defaults existing as of the effective date of the Postpetition Financing or the conversion to an exit loan under any of the leases and any other of the Postpetition Lender's
23  customary carve-outs, all of which shall be recourse to Guarantor.

24     In addition, the Postpetition Financing will be fully recourse to Guarantor in the event: (i) the Long Beach Property or any part of the collateral becomes an asset in a voluntary bankruptcy
25  or insolvency proceeding; (ii) the Debtor or any equity owner of the Debtor that is a single purpose entity or Guarantor (a) commences a voluntary bankruptcy or insolvency proceeding, or
26  (b) has an involuntary bankruptcy or insolvency proceeding commenced against it by any person or entity (other than by the Postpetition Lender) and the Debtor, such equity owner or Guarantor
27  fails to use commercially reasonable efforts to obtain a dismissal of such proceedings or has acted in collusion with the party commencing such proceeding; or (iii) any sale, transfer or conveyance
28  of the Long Beach Property or the direct or indirect equity interest in the Debtor in violation of the Postpetition Financing Documents shall occur.

MOTION FOR ORDER RE POSTPETITION FINANCING;
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1  Debtor has filed the *Statement Pursuant to LBR 4001-2 Regarding Cash Collateral Stipulations*

2  concurrently herewith.

3        Pursuant to Local Bankruptcy Rule 4001-2(b) and (d), the Debtor submits that the

4  requested relief pertaining to the Debtor's obtaining financing and use of cash collateral does not

5  (or does) contain any of the following provisions:

| Provision | Section of Document / Proposed Order |
|---|---|
| Cross-collateralization clauses | No. |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt. | No. |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No. |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | Yes.  The Debtor and the Postpetition Lender have agreed to various deadlines for the filing of a plan and plan-related documents.  Credit Agreement § 7.02. |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | Yes.  The Debtor has agreed to waive its rights under section 506(c).  Order ¶¶ F & 29. |
| Releases of liability for the creditor's alleged prepetition torts or breaches of contract. | No. |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No. |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No. |
| Provisions that provide disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the Debtor with | No. |

MOTION FOR ORDER RE POSTPETITION FINANCING;
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

| Provision | Section of Document / Proposed Order |
|---|---|
| respect to a professional fee carve out | |
| Provisions that prime any secured lien | No. |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | Yes, upon the occurrence of an event of default and following the giving of five (5) business days' notice to the Debtor.<br><br>Credit Agreement § 9.02.<br><br>Order ¶ 20. |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No. |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | Yes. Subject to entry of a Final Order, the Debtor will grant to the Postpetition Lender a lien on the proceeds of any Avoidance Actions.<br><br>Credit Agreement § 1.05(a).<br><br>Order ¶ 8(a). |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent. | Yes. The Debtor has agreed to waive its right to seek such authorization.<br><br>Order ¶ 35. |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No. |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | Yes. The Postpetition Financing will be used to pay the U.S. Bank Loan in full. |
| Findings of fact on matters extraneous to the approval process. | No. |

Pursuant to Bankruptcy Rule 4001(b)(1)(B) and (c)(1)(B), the Debtor hereby provides the following disclosures with respect to the financing:

| Provision | Section of Document / Proposed Order |
|---|---|
| A grant of priority or a lien on property of the estate under § 364(c) or (d) | Yes. The Postpetition Financing will be secured by a first priority perfected security interest in all of the Debtor's unencumbered assets and a junior perfected security interest in all of the Debtor's encumbered assets, including all real and personal property.<br><br>Order ¶¶ 8(a), 8(b), & 10. |
| The providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim. | Yes. The Postpetition Financing will be used to pay the U.S. Bank Loan in full. |
| A determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim. | No. |
| A waiver or modification of Code provisions or applicable rulings relating to the automatic stay. | Yes. The Postpetition Lender is granted relief from the automatic stay upon an event of default on the conditions set forth in the Postpetition Financing.<br><br>Order ¶ 20. |
| A waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request to obtain authority to obtain credit under § 364. | The Debtor and the Postpetition Lender have agreed to various deadlines for the filing of a plan and plan related documents.<br><br>Order ¶ 35. |
| The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for | The Debtor and the Postpetition Lender have |

- 8 -

| **Provision** | **Section of Document / Proposed Order** |
|---|---|
| a hearing on confirmation, or for entry of a confirmation order. | agreed to various deadlines for the filing of a plan and plan related documents. |
| A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien. | No. |
| A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action. | No. |
| The indemnity of an entity. | Yes. The Debtor will execute an environmental indemnity on behalf of the Postpetition Lender. |
| A release, waiver, or limitation of any right under Section 506(c) | Yes. The Debtor has agreed to waive its rights under section 506(c). Order ¶¶ F & 29. |
| The granting of a lien on any claim or cause of action arising under Sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) | Yes. Subject to entry of a Final Order, the Debtor will grant to the Postpetition Lender a lien on the proceeds of any Avoidance Actions. Order ¶ 8(a). |

## NOTICE

Bankruptcy Rule 4001 requires at least 14 days' notice of a motion for authority to obtain post-petition financing and for authority to use cash collateral. However, Bankruptcy Rule 4001 allows the Court to authorize post-petition financing and the use of cash collateral on less than 14 days' notice on an interim basis pending a final hearing to the extent necessary to avoid immediate and irreparable harm.

1    By a separately filed Application, the Debtor is requested (and received) a hearing on

2 shortened time for interim approval of the Motion on February 24, 2015, because there will be

3 immediate and irreparable harm without financing.  On January 6, 2015, the Court entered an

4 order granting U.S. Bank relief from the automatic stay to proceed with its non-judicial

5 foreclosure sale.  Pursuant to an agreement with the Debtor, U.S. Bank agreed not to proceed with

6 the foreclosure until March 1, 2015 to permit the Debtor additional time to obtain alternative

7 financing to repay the U.S. Bank Loan.  However, if U.S. Bank has not been repaid by March 1,

8 2015, U.S. Bank will proceed with the foreclosure of the Long Beach Property, which will destroy

9 the Debtor's going concern value for the estate and thereby eliminate any possibility of the

10 Debtor's successful reorganization.

11    In light of this reality, one condition to the closing of the Debtor's proposed postpetition

12 financing is that the Debtor obtain an interim order approving the terms of the financing on or

13 before February 26, 2015.  Having an order entered on or before February 26, 2015, is necessary

14 to provide sufficient time for the Debtor and the Postpetition Lender to finalize the financing

15 documents, to allow the Postpetition Lender to fund the loan, and for the Debtor to pay U.S. Bank

16 so as to avoid the foreclosure of the Long Beach Property.

17    By Order entered on February 19, 2015, the Court set a hearing on shortened time for

18 interim approval of the Motion on February 24, 2015 (the "Order Shortening Time").  Pursuant to

19 the Order Shortening Time, the Debtor is required to file and serve this Motion so that it is

20 actually received by the Court, the UST, counsel for U.S. Bank, and the Receiver no later than

21 4:00 p.m. on February 20, 2015.  The Debtor has complied with the foregoing by serving a copy

22 of the Motion on the Receiver and counsel for U.S. Bank via email and serving a copy of the

23 Motion on the Court and the UST via personal delivery.

24    In addition, pursuant to Bankruptcy Rule 4001 and in compliance with this Court's order

25 limiting notice entered on January 2, 2015, the Debtor is required to serve a copy of the Motion on

26 the 20 largest unsecured creditors and any other entity that the Court directs.  The Debtor has

27 complied with the foregoing by serving a copy of the Motion by email, facsimile, and/or overnight

28 mail on the 20 largest unsecured creditors and parties requesting special notice.

1    WHEREFORE, the Debtor respectfully requests that the Court enter an order:

2    1.    Finding that notice was good and proper;

3    2.    Granting this Motion on an interim basis;

4    3.    Approving and authorizing the Debtor to enter into the postpetition financing as set

5    forth in the proposed order attached as Exhibit "A" to the Abbey Declaraton;

6    4.    Granting the Postpetition Lender a super-priority administrative claim secured by a

7    first priority perfected security interest in all of the Debtor's unencumbered assets and a junior

8    perfected security interest in all of the Debtor's encumbered assets, including all real and personal

9    property, whether now owned or hereafter acquired;

10    5.    Authorizing the Debtor to use cash collateral on the terms set forth in the

11    Postpetition Financing Documents;

12    6.    Setting a final hearing on the Motion to grant this Motion on a final basis; and

13    7.    Granting such other and further relief as the Court deems just and proper.

14    DATED: February 20, 2015          IRELL & MANELLA LLP

15

16                                      By:  _____
17                                           Alan J. Friedman
                                             Kerri A. Lyman
18                                      Attorneys for AP-Long Beach Airport LLC

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

A.     The Chapter 11 Filing

1.     The Debtor commenced its bankruptcy case by filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code (the "Bankruptcy Code") on December 19, 2014 (the "Petition Date").  The Debtor continues to operate its business, manage its financial affairs, and operate its bankruptcy estate as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee has been appointed, and no committee of unsecured creditors has been formed.[3]

2.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

B.     Overview of the Debtor's Business

3.     The Debtor is a property-level subsidiary in a business enterprise with The Abbey Companies LLC ("ABLLC") as the most senior corporate entity (collectively, with its affiliates and subsidiaries including the Debtor, the "Abbey Enterprise").  The Abbey Enterprise was founded in 1990 by Donald G. Abbey ("Mr. Abbey"), a 33-year veteran of the national real estate industry, and is comprised of more than 60 legal entities.

4.     Mr. Abbey wholly owns the interests in ABLLC.  ABLLC directly or indirectly owns most of the subsidiaries, and Mr. Abbey owns the remaining other subsidiaries.  One of the several subsidiaries that ABLLC directly owns is wholly-owned subsidiary Abbey-Properties II LLC.  Abbey-Properties II LLC owns several subsidiaries, including its wholly-owned subsidiary the Debtor.

---

[3] On August 15, 2014, the state court appointed a receiver for the limited purpose of collecting rents on behalf of U.S. Bank at the Long Beach Property (as his role was modified from time to time, the "Receiver").  The Debtor has worked cooperatively with the Receiver since his appointment to ensure that the value of the Long Beach Property is not impaired as a result of his appointment.

C.    The Long Beach Property

5.    The Debtor owns a 206,945-square-foot building at Long Beach Airport located at 3205 Lakewood Boulevard, Long Beach, California (the "Long Beach Property") that originally was an airplane hangar.  The property is owned and operated by the Debtor on land owned by the City of Long Beach (the "City") that is leased to the Debtor.  The Debtor developed the property for a variety of uses and tenants, including significant facilities for the City and the U.S. Customs and Border Protection, a division of the Department of Homeland Security (the "CBP").  The CBP space is the subject of a lease between the Debtor and the General Services Administration ("GSA"), which leases the space for use by the CBP and is responsible for making payments on behalf of the CBP.

D.    The U.S. Bank Loan

6.    The Debtor is the borrower under that certain Construction Loan Agreement with U.S. Bank National Association ("U.S. Bank") in the principal amount of $37,764,469 (as amended, restated, supplemented, or otherwise modified from time to time, the "U.S. Bank Loan").  As of the Petition Date, the Debtor owed approximately $33.7 million plus unpaid interest and fees under the U.S. Bank Loan.  The obligations under the U.S. Bank Loan are secured by a construction deed of trust and assignment of leases and rents on the Long Beach Property.  Mr. Abbey personally guaranteed the obligations under the U.S. Bank Loan.

7.    On July 18, 2014, U.S. Bank issued a notice of default with respect to the U.S. Bank Loan and pursued its remedies, including a non-judicial foreclosure sale.  On August 11, 2014, U.S. Bank filed a complaint in the Superior Court of the State of California for the County of Los Angeles, Southern District against, the Debtor and Mr. Abbey seeking, among other things, the appointment of a receiver and to foreclose on the Long Beach Property (the "U.S. Bank Litigation").  On August 15, 2014, the state court appointed a receiver for the limited purpose of collecting rents on behalf of U.S. Bank at the Long Beach Property (the "Receiver").  Following a hearing on August 29, 2014, the state court expanded the powers of the Receiver.

8.    Shortly before the commencement of the Chapter 11 Case and on the eve of a non-judicial foreclosure sale of the Long Beach Property, the Debtor and Mr. Abbey entered into

1  a comprehensive agreement (as described more fully herein, the "U.S. Bank Agreement") with

2  U.S. Bank. The U.S. Bank Agreement provides the Debtor until March 1, 2015, to repay the U.S.

3  Bank Loan (as defined herein) through a refinancing or sale of the Debtor's assets. Pursuant to the

4  U.S. Bank Agreement, the Debtor and U.S. Bank entered into a stipulation shortly after the

5  Petition Date (the "U.S. Bank Stipulation"), subject to Bankruptcy Court approval. Among other

6  things, the U.S. Bank Stipulation provides for the lifting of the automatic stay set forth in section

7  362 of the Bankruptcy Code to enable U.S. Bank to foreclose upon the Long Beach Property.

8  U.S. Bank, however, agreed to forbear from such foreclosure provided that certain requirements

9  relating to the repayment of the U.S. Bank Loan are satisfied on or before March 1, 2015. During

10  that time, U.S. Bank has consented to the use of its cash collateral to maintain the Debtor's

11  property.

12         9.     Under the U.S. Bank Agreement, if the U.S. Bank Loan has not been repaid

13  by March 1, 2015, the Debtor has consented to allow U.S. Bank to proceed with its non-judicial

14  foreclosure sale.

15         10.    Immediately following the filing of the Chapter 11 case, the Debtor filed a

16  motion to assume the U.S. Bank Agreement and the U.S. Bank Stipulation, which motion was

17  approved, as modified by the Court and the parties, by an Order entered on February 3, 2015.

18  Among other things, the Bankruptcy Court approved the Debtor's interim use of cash collateral,

19  approved on an interim basis the retention of the Receiver, and granted U.S. Bank relief from the

20  automatic stay, subject to the terms and conditions contained in the U.S. Bank Stipulation.

21       E.    The Postpetition Financing

22         11.    Prepetition, to resolve the default and U.S. Bank's litigation, the Debtor

23  solicited financing from third parties to loan sufficient funds to the Debtor to repay the U.S. Bank

24  Loan in full. One financing source engaged in a significant amount of due diligence and provided

25  a comprehensive term sheet summarizing all of the principal terms of a proposed financing.

26  Unfortunately, the Debtor was unable to reach a resolution on the terms of a loan by December 16,

27  2014, as necessary to avoid the non-judicial foreclosure sale that was scheduled for December 17,

28  2014. The Debtor also explored financing from a lender that was considering extending financing

1  for certain assets of the Debtor's affiliates. However, the Debtor was not able to obtain financing

2  from this source.

3         12.     Following the Petition Date, the Debtor redoubled its efforts (which were

4  begun several months prepetition) on locating financing to repay the U.S. Bank Loan and has

5  spoken to numerous potential financing sources. In late January, the Debtor engaged Mount Nebo

6  Capital, Inc. ("Nebo") to assist in locating a source of financing to pay off the U.S. Bank Loan.

7  Given the tight timeline for obtaining new financing and avoiding the foreclosure of the Long

8  Beach Property, Nebo contacted eight potential lenders who, based on Nebo's experience, would

9  be receptive to non-standard transactions with short time frames. Two interested parties submitted

10  term sheet offers, but neither materialized into a viable offer.

11         13.     The financing terms offered by Macquarie Bank Limited (or an affiliate

12  thereof, the "Postpetition Lender"), which terms have been negotiated in good faith and at arms'

13  length, accordingly reflect the best terms available to the Debtor. Although the Postpetition

14  Lender has not yet obtained all required internal approvals to commit to the Postpetition Financing

15  (as defined below), it is working diligently to do so. This financing will accomplish the primary

16  objective of this Chapter 11 case and allow the Debtor to pay off the U.S. Bank Loan and avoid

17  the foreclosure of the Long Beach Property, while also providing the Debtor with working capital

18  and liquidity and a source of exit financing (subject to certain conditions) that will enable the

19  Debtor to propose, confirm, and consummate a Chapter 11 plan of reorganization. It is the

20  Debtor's reasonable business judgment that the proposed financing is in the best interest of the

21  estate and necessary to avoid immediate and irreparable harm.

22         14.     The loan (the "Postpetition Financing") is a single draw loan in the amount

23  of $40,500,000, at 10% interest (of which 6% will be paid current and the remainder will accrue).

24  The Postpetition Financing will provide the Debtor with sufficient funds to pay the U. S. Bank

25  Loan in full, as well as establish a $3,000,000 reserve to pay costs associated with new leases at

26  the Long Beach Property, and will convert to exit financing upon confirmation of a plan of

27  reorganization. The Postpetition Financing will be secured by a first priority perfected security

28  interest in all of the Debtor's unencumbered assets and a junior perfected security interest in all of

MOTION FOR ORDER RE POSTPETITION FINANCING;
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1    the Debtor's encumbered assets, including all real and personal property, as well as superpriority

2    administrative claims pursuant to 11 U.S.C. § 364(c)(l), and the Postpetition Lender's liens and

3    administrative superpriority claims will remain in full force and effect notwithstanding any

4    subsequent conversion or dismissal of the case.

5          15.    Mr. Abbey has agreed to guaranty certain of the Debtor's liabilities[4] and

6    issue an environmental indemnity.  In addition, Mr. Abbey will make a payment to the

7    Postpetition Lender ten days following the closing of the Postpetition Financing (the "Mandatory

8    Prepayment").  This Mandatory Prepayment will be applied against the Postpetition Financing as a

9    prepayment of principal.

10          16.    As a condition to the closing of the Postpetition Financing, the Postpetition

11    Lender has required that the Debtor obtain an interim Order approving the terms of the

12    Postpetition Financing on or before February 26, 2015.  Having an order entered on or before

13    February 26, 2015 is necessary to provide sufficient time for the Debtor and the Postpetition

14    Lender to finalize the Postpetition Financing, to allow the Postpetition Lender to fund the loan,

15    and for the Debtor to pay the U.S. Bank Loan so as to avoid the foreclosure of the Long Beach

16    Property.

17

18

19

20       [4] The guaranteed liabilities include, without limitation, environmental matters, intentional
misrepresentation, misappropriation of funds (including proceeds paid under any insurance
21    policies or condemnation proceedings, rents and security deposits), fraud, waste, failure by the
Debtor to purchase a replacement rate cap in accordance with the Postpetition Financing
22    documents, any defaults existing as of the effective date of the Postpetition Financing or the
conversion to an exit loan under any of the leases and any other of the Postpetition Lender's
23    customary carve-outs, all of which shall be recourse to Guarantor.

24       In addition, the Postpetition Financing will be fully recourse to Guarantor in the event: (i)
the Long Beach Property or any part of the collateral becomes an asset in a voluntary bankruptcy
25    or insolvency proceeding; (ii) the Debtor or any equity owner of the Debtor that is a single
purpose entity or Guarantor (a) commences a voluntary bankruptcy or insolvency proceeding, or
26    (b) has an involuntary bankruptcy or insolvency proceeding commenced against it by any person
or entity (other than by the Postpetition Lender) and the Debtor, such equity owner or Guarantor
27    fails to use commercially reasonable efforts to obtain a dismissal of such proceedings or has acted
in collusion with the party commencing such proceeding; or (iii) any sale, transfer or conveyance
28    of the Long Beach Property or the direct or indirect equity interest in the Debtor in violation of the
Postpetition Financing Documents shall occur.

F.    Summary of Terms

17.    For the convenience of the Court and in compliance with Local Bankruptcy Rule 4001-2(c), certain essential terms of the postpetition financing are summarized herein. The full terms of the Postpetition Financing are set forth in the documents attached to the Abbey Declaration, including but not limited to the Proposed Order attached as Exhibit "A" thereto (the proposed order with all exhibits, the "Postpetition Financing Documents"). Creditors and parties in interest wishing to know the specific terms of the financing should read Exhibit "A" to the Abbey Declaration. To the extent that there are any inconsistencies or uncertainties between the terms in the proposed order and this Motion, the terms in the Postpetition Financing Documents control.

18.    As required by Local Bankruptcy Rule 4001-2(c), a summary of terms is as follows:

  a.    Interim borrowing limit: a single draw loan of $40,500,000;

  b.    Maximum borrowing available on a final basis: a single draw loan of $40,500,000;

  c.    Borrowing conditions: approval of the Motion and other terms of the Postpetition Financing;

  d.    Events of default: (i) the Debtor's failure to comply with the covenants or perform any of its obligations in accordance with the terms of the Postpetition Financing and order granting the Motion and (ii) the occurrence and continuance of any "Event of Default" (as that term is defined in the Postpetition Financing);

  e.    Outside maturity date: 24 months after the funding of the Postpetition Financing;

  f.    Use of funds limitations: the funds shall be used for (a) the repayment of the U.S. Bank Loan; (b) expenses incurred in connection of the closing of the Postpetition Financing; and (c) a

reserve for the purpose of funding leasing costs, and in accordance with the order approving the Motion;

g.  Protections afforded under §§ 363 and 364: Superpriority administrative expense claim in favor of the Postpetition Lender. Senior and junior liens in favor of the Postpetition Lender.  No additional secured financing without Postpetition Lender's consent. Use of cash collateral solely in accordance with terms of Postpetition Financing Documents.

19.  Pursuant to Local Bankruptcy Rule 4001-2(b) and (d), the Debtor submits that the requested relief pertaining to the Debtor's obtaining financing and use of cash collateral does not (or does) contain any of the following provisions:

| **Provision** | **Section of Document / Proposed Order** |
|---|---|
| Cross-collateralization clauses | No. |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt. | No. |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No. |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | Yes.  The Debtor and the Postpetition Lender have agreed to various deadlines for the filing of a plan and plan-related documents.

Credit Agreement § 7.02. |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | Yes.  The Debtor has agreed to waive its rights under section 506(c).

Order ¶¶ F & 29. |
| Releases of liability for the creditor's alleged prepetition torts or breaches of contract. | No. |

| Provision | Section of Document / Proposed Order |
|---|---|
| Waivers of avoidance actions arising under the Bankruptcy Code. | No. |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No. |
| Provisions that provide disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the Debtor with respect to a professional fee carve out | No. |
| Provisions that prime any secured lien | No. |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | Yes, upon the occurrence of an event of default and following the giving of five (5) business days' notice to the Debtor.<br><br>Credit Agreement § 9.02.<br><br>Order ¶ 20. |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No. |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | Yes. Subject to entry of a Final Order, the Debtor will grant to the Postpetition Lender a lien on the proceeds of any Avoidance Actions.<br><br>Credit Agreement § 1.05(a).<br><br>Order ¶ 8(a). |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent. | Yes. The Debtor has agreed to waive its right to seek such authorization.<br><br>Order ¶ 35. |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the | No. |

- 19 -

| **Provision** | **Section of Document / Proposed Order** |
|---|---|
| applicable cash collateral order. | |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | Yes. The Postpetition Financing will be used to pay the U.S. Bank Loan in full. |
| Findings of fact on matters extraneous to the approval process. | No. |

20.    Pursuant to Bankruptcy Rule 4001(b)(1)(B) and (c)(1)(B), the Debtor hereby provides the following disclosures with respect to the financing:

| **Provision** | **Section of Document / Proposed Order** |
|---|---|
| A grant of priority or a lien on property of the estate under § 364(c) or (d) | Yes. The Postpetition Financing will be secured by a first priority perfected security interest in all of the Debtor's unencumbered assets and a junior perfected security interest in all of the Debtor's encumbered assets, including all real and personal property.<br><br>Order ¶¶ 8(a), 8(b), & 10. |
| The providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim. | Yes. The Postpetition Financing will be used to pay the U.S. Bank Loan in full. |
| A determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim. | No. |
| A waiver or modification of Code provisions or applicable rulings relating to the automatic stay. | Yes. The Postpetition Lender is granted relief from the automatic stay upon an event of default on the conditions set forth in the Postpetition Financing. |

MOTION FOR ORDER RE POSTPETITION FINANCING;
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

| Provision | Section of Document / Proposed Order |
|---|---|
| | Order ¶ 20. |
| A waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request to obtain authority to obtain credit under § 364. | The Debtor and the Postpetition Lender have agreed to various deadlines for the filing of a plan and plan related documents.<br><br>Order ¶ 35. |
| The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order. | The Debtor and the Postpetition Lender have agreed to various deadlines for the filing of a plan and plan related documents. |
| A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien. | No. |
| A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action. | No. |
| The indemnity of an entity. | Yes. The Debtor will execute an environmental indemnity on behalf of the Postpetition Lender. |
| A release, waiver, or limitation of any right under Section 506(c) | Yes. The Debtor has agreed to waive its rights under section 506(c).<br><br>Order ¶¶ F & 29. |
| The granting of a lien on any claim or cause of action arising under Sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) | Yes. Subject to entry of a Final Order, the Debtor will grant to the Postpetition Lender a lien on the proceeds of any Avoidance Actions.<br><br>Order ¶ 8(a). |

3240353.8

1            21.    The Debtor represents that the financing is in the best interest of the estate

2 and that the Court should grant the Motion and authorize the Debtor to enter into the Postpetition

3 Financing.

4 **II.**

5 **DISCUSSION**

6     A.    <u>The Standard for Obtaining Secured Credit Pursuant to 11 U.S.C. § 364.</u>

7           Pursuant to Section 364 of the Bankruptcy Code, the Court may, after notice and a hearing,

8 grant authority to a trustee or debtor in possession to obtain credit or incur a debt secured by a lien

9 on property of the estate.  Section 364(c) of the Bankruptcy Code provides, in pertinent part, as

10 follows:

11                If the trustee is unable to obtain unsecured debt allowable under
                section 503(b)(1) of this title as an administrative expense, the court,

12                after notice and a hearing, may authorize the obtaining of credit or
                the incurring of debt -

13

14                      (1)    with priority over any or all administrative expenses
                of the kind specified in section 503(b) or 507(b) of this title;

15                      (2)    secured by a lien on property of the estate that is not
                otherwise subject to a lien; or

16

17                      (3)    secured by a junior lien on property of the estate that
                is subject to a lien.

18 11 U.S.C. § 364(c).

19           Section 364 of the Bankruptcy Code is structured with an escalating series of inducements

20 which a debtor in possession may offer to obtain credit during the post-petition period.  <u>In re</u>

21 <u>Photo Promotion Associates. Inc.</u>, 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988), aff'd, 881 F.2d 6

22 (2d. Cir. 1989); <u>In re Southern Soya. Corp.</u>, 251 B.R. 302, 307 (Bankr. D.S.C. 2000); <u>In re Ames</u>

23 <u>Dept. Stores, Inc.</u>, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990).  Therefore, where a trustee or debtor

24 in possession cannot otherwise obtain unsecured post-petition credit, such credit may be obtained

25 on a secured basis under stated conditions.  <u>In re T.M. Sweeney & Sons LTL Services. Inc.</u>, 131

26 B.R. 984, 989 (Bankr. N.D.I11. 1991); <u>In re Ames Dept. Stores. Inc.</u>, 115 B.R. at 37.  For

27 example, if creditors are unwilling to extend unsecured credit to a debtor in possession, further

28 inducements are offered, with court approval, after notice and a hearing, including, without

3240353.8               - 22 -        MOTION FOR ORDER RE POSTPETITION FINANCING;
                                                   MEMORANDUM OF POINTS
                                      AND AUTHORITIES IN SUPPORT THEREOF

1  limitation, liens equal to or senior to existing liens on encumbered property in accordance with 11

2  U.S.C. § 364(d). In re Photo Promotion Associates, Inc., 87 B.R. at 839; see Resolution Trust

3  Corp. v. Official Unsecured Creditors Com. (In re Defender Drug Stores. Inc.), 145 B.R 312, 317

4  (9th Cir. B.A.P. 1992).

5       Section 364(c) of the Bankruptcy Code also enumerates certain incentives that a court may

6  grant to post-petition lenders.  The Section 364(c) list, however, is not exhaustive.  Courts

7  frequently have authorized the use of inducements not specified in the statute.  See, e.g., In re

8  Ellingsen MacLean Oil Co.,834 F.2d 599 (6th Cir. 1987) (affirming financing order which

9  prohibited any challenges to the validity of already existing liens); In re Defender Drug Stores,

10  126 B.R. 76 (Bankr. D. Ariz. 1991) (authorizing enhancement fee to post-petition lender), affd

11  145 B.R. at 316 ("[bankruptcy courts . . . have regularly authorized postpetition financial

12  arrangements containing lender incentives beyond the explicit priorities and liens specified in

13  section 364").

14       Two factors courts consider in determining whether to authorize post-petition financing

15  that contemplates the granting of a super-priority administrative claim in favor of the lender are

16  (1) whether the debtor is unable to obtain unsecured credit per 11 U.S.C. § 364(b), i.e., by

17  allowing a lender only an administrative claim per 11 U.S.C. § 503(b)(1)(A); and (2) whether the

18  terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-

19  borrower and the proposed lender.  See In re Grouse Group, Inc., 71 B.R. 544, 549

20  (Bankr.E.D.Pa.1987); see also In re Aqua Assoc., 123 B.R. 192,195 (Bankr.E.D.Pa.1991).

21       In the instant case, the Debtor has satisfied the standards for approval of the Postpetition

22  Financing on the terms provided in the proposed order.  The Debtor was unable to find sufficient

23  financing on a purely administrative claim basis, and the terms of the Postpetition Financing are

24  fair, reasonable, and adequate under the circumstances.  Furthermore, the only existing secured

25

26

27

28

MOTION FOR ORDER RE POSTPETITION FINANCING;
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1  creditor, U.S. Bank, will be paid in full from the proceeds of the Postpetition Financing, and as

2  such, no adequate protection is necessary.[5]

3      1.      The Debtor Was Unable to Obtain Unsecured Credit.  In satisfying the standards of

4  Section 364, a debtor need not seek credit from every available source, but should make a

5  reasonable effort to seek other sources of credit available under § 364(a) and (b).  See, e.g., In re

6  Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir.1986) (trustee had demonstrated by good faith effort

7  that credit was not available without senior lien by unsuccessfully contacting other financial

8  institutions in immediate geographic area; "the statute imposes no duty to seek credit from every

9  possible lender before concluding that such credit is unavailable"); Ames, supra, 115 B.R. at 40

10  (finding that debtors demonstrated the unavailability of unsecured financing where debtors

11  approached four lending institutions).

12      Here, the Debtor's management spent several months – both prepetition and postpetition –

13  seeking a source of financing that would enable it to pay off the U.S. Bank Loan and avoid

14  foreclosure.  The Debtor engaged Nebo to assist in locating a source of financing, and Nebo, in

15  turn, contacted eight potential lenders known to be receptive to non-standard transactions with

16  short time frames.  Despite Nebo's and the Debtor's engagement with these potential financing

17  sources, the best financing option proposed was the Postpetition Financing from the Postpetition

18  Lender.

19      2.      The Terms of the Proposed Financing Are Fair, Reasonable and Adequate.  The

20  Debtor submits that terms of the proposed post-petition financing from Postpetition Lender are

21  fair, reasonable and adequate.  Postpetition Lender is not an insider of the Debtor and has been

22  asked to commit to providing the Debtor with $40,500,000 of post-petition financing.  The interest

23  rate of 10% interest (of which 6% will be paid current and the remainder will accrue) is

24  reasonable, and the Debtor negotiated for this rate in good faith and at arms' length.  The

25  Postpetition Financing offers the Debtor its best opportunity to keep the Debtor operating and

26

27      [5] The Postpetition Financing will be subject to and subordinate to the rights of LCS

28  Constructors ("LCS") to the GSA Assignment, as defined in the Release and Settlement
Agreement dated as of December 17, 2014 among LCS, Debtor and U.S. Bank.

1  increase the going-concern value of the business.  Without the loan, U.S. Bank will foreclose on

2  the Long Beach Property.  The terms of the financing were negotiated by and between the Debtor

3  and Postpetition Lender in good faith and at arm's length.  The financing terms and amount of

4  credit offered by Postpetition Lender are the best terms available to the Debtor.

5          3.      The Proposed Financing Is Necessary and Proper.  The Court is authorized to act in

6  its informed discretion in determining whether to approve post-petition financing.  In re Ames

7  Dept. Stores, Inc., 115 B.R. at 37.  However, the Court should give broad deference to the

8  business decision of a Chapter 11 debtor, particularly with respect to a debtor's business judgment

9  regarding the need for and proposed use of funds.  Richmond Leasing Co. v. Capital Bank N.A.,

10 762 F.2d 1303, 1311 (5th Cir. 1985).  "[T]he court's discretion under section 364 is to be utilized

11 on the grounds that permit the reasonable business judgment [of the Debtor] to be exercised ..." In

12 re Ames Dept. Stores, Inc., 115 B.R. at 40.

13          Without additional financing, U.S. Bank will foreclose on the Long Beach Property and

14 the Debtor will no longer be able to operate its business as a going concern.  Without this

15 financing, there will be irreparable harm to the Debtor.  The Debtor has therefore concluded that

16 obtaining post-petition financing on the proposed terms herein is in the best interests of the

17 Debtor's estate.

18      B.      The Debtor's Use of Cash Collateral is Permissible Under Section 363 of the

19              Bankruptcy Code

20          The Debtor also seeks authority to use its cash collateral to operate its business pending a

21 final hearing on the Motion.  Section 363(c)(2) of the Bankruptcy Code provides that a debtor may

22 not use, sell, or lease cash collateral unless:  "(A) each entity that has an interest in such cash

23 collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease

24 in accordance with the provisions of this section."  Additionally, section 363(e) of the Bankruptcy

25 Code provides that "on request of an entity that has an interest in property . . . proposed to be used,

26 sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such

27 use, sale or lease as is necessary to provide adequate protection of such interest."

28

1   It is necessary for the Debtor (and the Receiver, as applicable) to have approval of the use

2   of cash collateral to pay for costs, expenses, and other obligations related to the Long Beach

3   Property as they come due to continue to operate in the ordinary course of business.

4   In August 2014, the California State Court appointed the Receiver in connection with the

5   U.S. Bank Litigation.  Among other things, the Receiver has collected rents with respect to the

6   Long Beach Property since that time and U.S. Bank authorized the use of its cash collateral for the

7   payment of various costs and obligations related to the Long Beach Property pursuant to the

8   Budget attached to the Declaration of David Stapleton filed on December 29, 2014 [Dkt. # 44] (the

9   "Budget").  On January 2, 2015, this Court entered an interim Order authorizing the Debtor and

10  the Receiver to continue using U.S. Bank's cash collateral.

11  Following the payment of the U.S. Bank Loan, the U.S. Bank Litigation will also be

12  resolved and the Receiver's obligations with respect to the Long Beach Property will be complete.

13  In order to ensure a smooth transition from the prepetition financing provided to U.S. Bank to the

14  Postpetition Financing, and to ensure that all postpetition creditors are timely paid, the Debtor and

15  the Postpetition Lender have asked the Receiver to remain in place through confirmation and

16  consummation of a plan of reorganization.  At that time, all funds held by the Receiver will be

17  turned over to the Debtor or the Postpetition Lender, as agreed by the parties.

18  The Debtor now seeks an interim Order seeking authority to use the Postpetition Lender's

19  cash collateral on the terms set forth in the Postpetition Financing and in accordance with the

20  Budget.  The Postpetition Lender has consented to the Debtor's use of cash collateral pursuant to

21  the terms and conditions of the Postpetition Financing.  As such, the Debtor submits that the

22  requirements of section 363(c)(2) are satisfied.

23  C.   The Procedural Requirements Regarding Approval of this Motion Have Been

24       Satisfied.

25  Bankruptcy Rule 4001(c) requires at least 14 days' notice of a motion for authority to

26  obtain post-petition financing and for authority to use cash collateral.  However, Bankruptcy Rule

27  4001(c) allows the Court to authorize post-petition financing and the use of cash collateral on less

28

MOTION FOR ORDER RE POSTPETITION FINANCING;
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1    than 14 days' notice on an interim basis pending a final hearing to the extent necessary to avoid

2    immediate and irreparable harm.

3           By a separately filed Application, the Debtor is requested (and received) a hearing on

4    shortened time for interim approval of the Motion on February 24, 2015, because there will be

5    immediate and irreparable harm without financing.  On January 6, 2015, the Court entered an

6    order granting U.S. Bank relief from the automatic stay to proceed with its non-judicial

7    foreclosure sale.  Pursuant to an agreement with the Debtor, U.S. Bank agreed not to proceed with

8    the foreclosure until March 1, 2015 to permit the Debtor additional time to obtain alternative

9    financing to repay the U.S. Bank Loan.  However, if U.S. Bank has not been repaid by March 1,

10   2015, U.S. Bank will proceed with the foreclosure of the Long Beach Property, which will destroy

11   the Debtor's going concern value for the estate and thereby eliminate any possibility of the

12   Debtor's successful reorganization.

13          In light of this reality, one condition to the closing of the Debtor's proposed postpetition

14   financing is that the Debtor obtain an interim order approving the terms of the financing on or

15   before February 26, 2015.  Having an order entered on or before February 26, 2015, is necessary

16   to provide sufficient time for the Debtor and the Postpetition Lender to finalize the financing

17   documents, to allow the Postpetition Lender to fund the loan, and for the Debtor to pay U.S. Bank

18   so as to avoid the foreclosure of the Long Beach Property.

19          As discussed above, by Order entered on February 19, 2015, the Court set a hearing on

20   shortened time for interim approval of the Motion on February 24, 2015 (the "Order Shortening

21   Time").  Pursuant to the Order Shortening Time, the Debtor is required to file and serve this

22   Motion so that it is actually received by the Court, the UST, counsel for U.S. Bank, and the

23   Receiver no later than 4:00 p.m. on February 20, 2015.  The Debtor has complied with the

24   foregoing by serving a copy of the Motion on the Receiver and counsel for U.S. Bank via email

25   and serving a copy of the Motion on the Court and the UST via personal delivery.

26          In addition, pursuant to Bankruptcy Rule 4001 and in compliance with this Court's order

27   limiting notice entered on January 2, 2015, the Debtor is required to serve a copy of the Motion on

28   the 20 largest unsecured creditors and any other entity that the Court directs.  The Debtor has

MOTION FOR ORDER RE POSTPETITION FINANCING;
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1    complied with the foregoing by serving a copy of the Motion by email, facsimile, and/or overnight

2    mail on the 20 largest unsecured creditors and parties requesting special notice.

### III.

### CONCLUSION

5    **WHEREFORE,** the Debtor respectfully requests that the Court enter an order:

6    1.    Finding that notice was good and proper;

7    2.    Granting this Motion on an interim basis;

8    3.    Approving and authorizing the Debtor to enter into the postpetition financing as set

9    forth in the proposed order attached as Exhibit "A" to the Abbey Declaration;

10   4.    Granting the Postpetition Lender a super-priority administrative claim secured by a

11   first priority perfected security interest in all of the Debtor's unencumbered assets and a junior

12   perfected security interest in all of the Debtor's encumbered assets, including all real and personal

13   property, whether now owned or hereafter acquired;

14   5.    Authorizing the Debtor to use cash collateral on the terms set forth in the

15   Postpetition Financing Documents;

16   6.    Setting a final hearing on the Motion to grant this Motion on a final basis; and

17   7.    Granting such other and further relief as the Court deems just and proper.

18   DATED:  February 20, 2015                    IRELL & MANELLA LLP

19

20                                               By:  _Kerri C. Lyman_

21                                                    Alan J. Friedman
                                                      Kerri A. Lyman
22                                               Attorneys for AP-Long Beach Airport, LLC

23

24

25

26

27

28

## DECLARATION OF DONALD G. ABBEY

I, DONALD G. ABBEY, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.      AP-Long Beach Airport LLC, the debtor and debtor in possession (the "Debtor") in this chapter 11 case (the "Chapter 11 Case"), is a property-level subsidiary in a business enterprise with The Abbey Companies LLC as the most senior corporate entity (collectively, with its affiliates and subsidiaries including the Debtor, the "Abbey Enterprise"). I am a 33-year veteran of the national real estate industry, and the founder of the Abbey Enterprise, which is comprised of more than 60 legal entities. In that capacity, I am generally familiar with the day-to-day operations, business and financial affairs, and books and records of the entire Abbey Enterprise.[1]

3.      Except as otherwise indicated herein, all facts set forth in this Declaration are based on my personal knowledge of the Debtor's operations and finances, information gathered from my review of relevant documents, and information supplied to me by other members of the management and advisors for the Abbey Enterprise. If called upon to testify, I could and would competently testify to the facts set forth herein on that basis.

4.      I make this Declaration in support of the Debtor's *Motion for Interim and Final Orders (A) Authorizing Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Granting Liens to Postpetition Lender Pursuant to Section 364 of the Bankruptcy Code, and (C) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code* (the "Motion"). Unless otherwise stated with specificity or implied by context, capitalized defined terms have the same meaning in this declaration as used in the Motion.

---

[1]    On August 15, 2014, the state court appointed a receiver for the limited purpose of collecting rents on behalf of U.S. Bank at the Long Beach Property (as his role was modified from time to time, the "Receiver"). The Debtor has worked cooperatively with the Receiver since his appointment to ensure that the value of the Long Beach Property is not impaired as a result of his appointment.

1    5.    The Debtor is a property-level subsidiary in a business enterprise with The Abbey

2    Companies LLC ("ABLLC") as the most senior corporate entity (collectively, with its affiliates

3    and subsidiaries including the Debtor, the "Abbey Enterprise"). I founded the Abbey Enterprise,

4    which is comprised of more than 60 legal entities, in 1990.

5    6.    I own 100% of the interests in ABLLC. ABLLC directly or indirectly owns most

6    of the subsidiaries, and I own the remaining other subsidiaries. One of the several subsidiaries

7    that ABLLC directly owns is wholly-owned subsidiary Abbey-Properties II LLC. Abbey-

8    Properties II LLC owns several subsidiaries, including its wholly-owned subsidiary the Debtor.

9    7.    The Debtor owns a 206,945-square-foot building at Long Beach Airport located at

10   3205 Lakewood Boulevard, Long Beach, California (the "Long Beach Property") that originally

11   was an airplane hangar. The property is owned and operated by the Debtor on land owned by the

12   City of Long Beach (the "City") that is leased to the Debtor. The Debtor developed the property

13   for a variety of uses and tenants, including significant facilities for the City and the U.S. Customs

14   and Border Protection, a division of the Department of Homeland Security (the "CBP"). The CBP

15   space is the subject of a lease between the Debtor and the General Services Administration

16   ("GSA"), which leases the space for use by the CBP and is responsible for making payments on

17   behalf of the CBP.

18   8.    The Debtor is the borrower under that certain Construction Loan Agreement with

19   U.S. Bank National Association ("U.S. Bank") in the principal amount of $37,764,469 (as

20   amended, restated, supplemented, or otherwise modified from time to time, the "U.S. Bank

21   Loan"). As of the Petition Date, the Debtor owed approximately $33.7 million plus unpaid

22   interest and fees under the U.S. Bank Loan. The obligations under the U.S. Bank Loan are

23   secured by a construction deed of trust and assignment of leases and rents on the Long Beach

24   Property. I personally guaranteed the obligations under the U.S. Bank Loan.

25

26

27

28

1       9.     Prepetition, to resolve the default and U.S. Bank's litigation, the Debtor solicited

2  financing from third parties to loan sufficient funds to the Debtor to repay the U.S. Bank Loan in

3  full.  One financing source engaged in a significant amount of due diligence and provided a

4  comprehensive term sheet summarizing all of the principal terms of a proposed financing.

5  Unfortunately, the Debtor was unable to reach a resolution on the terms of a loan by December 16,

6  2014, as necessary to avoid the non-judicial foreclosure sale that was scheduled for December 17,

7  2014.  The Debtor also explored financing from a lender that was considering extending financing

8  for certain assets of the Non-Debtor Abbey Companies.  However, the Debtor was not able to

9  obtain financing from this source.

10       10.    Following the Petition Date, the Debtor redoubled its efforts (which were begun

11  several months prepetition) on locating financing to repay the U.S. Bank Loan and has spoken to

12  numerous potential financing sources.  Given the tight timeline for obtaining new financing and

13  avoiding the foreclosure of the Long Beach Property, the Debtor targeted approximately eight

14  specific sources of financing.  Despite engaging in initial discussions with these lenders, none of

15  these discussions resulted in an agreement on financing terms.  The Debtor has thus been unable to

16  acquire financing on terms more favorable than those offered by Macquarie Bank Limited (or an

17  affiliate thereof, the "Postpetition Lender"), which terms have been negotiated in good faith and at

18  arms' length, and accordingly reflect the best terms available to the Debtor.

19       11.    The Postpetition Lender has advised the Debtor that it has not yet obtained all

20  required internal approvals to commit to the Postpetition Financing, but is working diligently to do

21  so.

22

23

24

25

26

27

28

DECLARATION OF DONALD G. ABBEY IN SUPPORT OF
EMERGENCY MOTION FOR POSTPETITION FINANCING

12.     I believe that this financing will accomplish the primary objective of this Chapter 11 case and allow the Debtor to pay off the U.S. Bank Loan and avoid the foreclosure of the Long Beach Property, while also providing the Debtor with working capital and liquidity and a source of exit financing (subject to certain conditions) that will enable the Debtor to propose, confirm, and consummate a Chapter 11 plan of reorganization.  It is the Debtor's reasonable business judgment that the proposed financing is in the best interest of the estate and necessary to avoid immediate and irreparable harm.

13.     I have agreed to guaranty certain of the Debtor's liabilities[2] and issue an environmental indemnity.  In addition, I will make a payment to the Postpetition Lender ten days following the closing of the Postpetition Financing (the "Mandatory Prepayment").  This Mandatory Prepayment will be applied against the Postpetition Financing as a prepayment of principal.

14.     The full terms of the Postpetition Financing are set forth in the documents attached hereto, including but not limited to the Proposed Order attached as Exhibit "A" hereto (collectively, the "Postpetition Financing Documents").

15.     I believe that the financing is in the best interest of the estate.

_____

[2] The guaranteed liabilities include, without limitation, environmental matters, intentional misrepresentation, misappropriation of funds (including proceeds paid under any insurance policies or condemnation proceedings, rents and security deposits), fraud, waste, failure by the Debtor to purchase a replacement rate cap in accordance with the Postpetition Financing documents, any defaults existing as of the effective date of the Postpetition Financing or the conversion to an exit loan under any of the leases and any other of the Postpetition Lender's customary carve-outs, all of which shall be recourse to Guarantor.

In addition, the Postpetition Financing will be fully recourse to Guarantor in the event: (i) the Long Beach Property or any part of the collateral becomes an asset in a voluntary bankruptcy or insolvency proceeding; (ii) the Debtor or any equity owner of the Debtor that is a single purpose entity or Guarantor (a) commences a voluntary bankruptcy or insolvency proceeding, or (b) has an involuntary bankruptcy or insolvency proceeding commenced against it by any person or entity (other than by the Postpetition Lender) and the Debtor, such equity owner or Guarantor fails to use commercially reasonable efforts to obtain a dismissal of such proceedings or has acted in collusion with the party commencing such proceeding; or (iii) any sale, transfer or conveyance of the Long Beach Property or the direct or indirect equity interest in the Debtor in violation of the Postpetition Financing Documents shall occur.

DECLARATION OF DONALD G. ABBEY IN SUPPORT OF
EMERGENCY MOTION FOR POSTPETITION FINANCING

1    16.    Based on the foregoing, I respectfully request that the Court should grant the

2  Motion and authorize the Debtor to enter into the Postpetition Financing.

3    I declare under penalty of perjury that the foregoing is true and correct.

4    Executed this 19th day of February 2015, at Los Angeles, California.

7    Donald G. Abbey

DECLARATION OF DONALD G. ABBEY IN SUPPORT OF
EMERGENCY MOTION FOR POSTPETITION FINANCING