# EXHIBIT "A"

1   Alan J. Friedman (State Bar No. 132580)
    afriedman@irell.com
2   Kerri A. Lyman (State Bar No. 241615)
    klyman@irell.com
3   IRELL & MANELLA LLP
    840 Newport Center Drive, Suite 400
4   Newport Beach, California 92660-6324
    Telephone:  (949) 760-0991
5   Facsimile:  (949) 760-5200

6   *Attorneys for AP-Long Beach Airport LLC*

7

8                   UNITED STATES BANKRUPTCY COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                      LOS ANGELES DIVISION

11

12  In re                              )   Case No. 2:14-bk-33372-VZ
                                        )
13  AP-LONG BEACH AIRPORT LLC, a        )   Chapter 11 Case
    Delaware limited liability company, )
14                                      )   **[PROPOSED] INTERIM ORDER**
                                        )   **(A) AUTHORIZING POSTPETITION**
15           Debtor and Debtor-in-      )   **FINANCING PURSUANT TO SECTION**
             Possession.               )   **364 OF THE BANKRUPTCY CODE, (B)**
16                                      )   **GRANTING LIENS TO POSTPETITION**
                                        )   **LENDER PURSUANT TO SECTION 364**
17                                      )   **OF THE BANKRUPTCY CODE, AND (C)**
                                        )   **AUTHORIZING USE OF CASH**
18                                      )   **COLLATERAL PURSUANT TO**
                                        )   **SECTION 363 OF THE BANKRUPTCY**
19                                      )   **CODE**
                                        )
20                                      )
                                        )   Hearing:
21                                      )   Date: February 24, 2015
                                        )   Time: 1:45 p.m. (PT)
22                                      )    Courtroom:  1368
                                        )
23                                      )
                                        )
24                                      )
                                        )
25                                      )
                                        )
26  _____)

27

28

The motion (the "Motion") [Doc. No. ___] for entry of an interim order (this "Interim Order") and a final order (the "Final Order"), pursuant to sections 105, 361, 362, 363, and 364 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and rules 2081-1(a)(9), 4001-2, and 9075-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California (the "LBR"):

a)   authorizing the Debtor to obtain postpetition financing pursuant to a $40.5 million superpriority senior secured term loan credit facility (the "DIP Facility"), in the form attached hereto as Exhibit 1 (the "DIP Credit Agreement,"[1] and together with any related documents or agreements, the "DIP Documents"), from Macquarie Bank Limited as administrative and collateral agent and lender under the DIP Facility (in all such capacities, the "DIP Lender");

b)   granting security interests, liens, mortgages, and superpriority claims to the DIP Lender (including, without limitation, superpriority claims under section 364(c)(1) of the Bankruptcy Code and liens under section 364(c)(2) and (c)(3) of the Bankruptcy Code);

c)   authorizing the Debtor's use of "Cash Collateral" (as defined in section 363(a) of the Bankruptcy Code) as set forth herein;

d)   modifying the automatic stay to the extent set forth herein and as provided in the DIP Documents;

e)   authorizing the Debtor to repay, upon entry of this Interim Order, all obligations owing under the Prepetition Credit Facility[2] (including, without limitation, all accrued interest, fees, costs, expenses, charges, reimbursements, and other obligations thereunder);

f)   approving the Debtor's waiver of its rights to charge expenses against the DIP Collateral (as defined below) under section 506(c) of the Bankruptcy Code, as set forth in the Motion and in the DIP Documents;

g)   scheduling the Final Hearing (as defined below); and

h)   granting of certain related relief, all as set forth herein;

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion or in the DIP Credit Agreement, as applicable.

[2]  "Prepetition Credit Facility" means the credit facility provided under that certain Construction Loan Agreement dated February 3, 2012, as amended from time to time, by and between the Debtor and U.S. Bank National Association (the "Prepetition Lender").

2

came on for duly-noticed hearing before the undersigned on February 24, 2015, at 1:45 p.m. (the "Hearing"). Appearances were as noted in the record. The Court having considered the Motion and supporting papers, the arguments of counsel, and all other pleadings and papers filed herein, [and no opposition to the Motion or the entry of this Interim Order having been filed or raised at the Hearing], and good cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    Commencement of Cases. On December 19, 2014 (the "Petition Date"), the Debtor filed with the Bankruptcy Court for the Central District of California (the "Court") a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Case").

B.    Jurisdiction and Venue. This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter an order consistent with Article III of the United States Constitution. Venue of the Chapter 11 Case and the Motion in this District are proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and LBR 2081-1(a)(9), 4001-2, and 9075-1.

C.    Adequate Notice. In accordance with Bankruptcy Rules 2002, 4001(d), and 9014, and the LBR, notice of the Hearing and the relief requested in the Motion has been provided by the Debtor by facsimile, email, overnight courier, and/or hand delivery to certain parties in interest (or their counsel, if known), including: (a) the Office of the United States Trustee, Attn: Kelly J. Morrison, Office of the United States Trustee, 915 Wilshire Blvd., Ste. 1850, Los Angeles, CA

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

90017; (b) Counsel for U.S. Bank, Sheppard Mullin Richter & Hampton LLP, 650 Town Center Drive, 4th Floor, Costa Mesa, CA 92626; (c) the Receiver, Stapleton Inc., Attn: David Stapleton, 515 South Flower Street, 36th Floor, Los Angeles, CA 90071; (d) the 20 largest unsecured creditors, and (e) all parties requesting special notice (collectively, the "Notice Parties").  The Debtor has made reasonable efforts to afford the best notice possible under the circumstances to permit the relief set forth in this Interim Order, and no other or further notice is or shall be required.

      D.    Findings Regarding Postpetition Financing.

      (i)    Request for Postpetition Financing.  The Debtor seeks authority to obtain the DIP Facility on the terms described herein and in the DIP Documents to refinance the Prepetition Credit Facility and fund its operations.

      (ii)    Need for Postpetition Financing.  The Debtor needs to obtain the DIP Facility (i) to ensure that the Debtor has sufficient working capital and liquidity and can preserve and maintain the going concern value of the Debtor's estate, (ii) to provide the Debtor with funds to pay off the Prepetition Credit Facility and avoid foreclosure by the Prepetition Lender, and (iii) to provide the Debtor with a committed source of exit financing to enable the Debtor to pursue confirmation of a chapter 11 plan of reorganization.

      (iii)    No Credit Available on More Favorable Terms.  Given its current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility.  The Debtor has been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  Financing on a postpetition basis is not otherwise available without granting the DIP Lender (x) perfected security interests in and liens on (each, as provided herein) all of the Debtor's existing and after-acquired assets with the priorities set forth in

paragraph 8 of this Interim Order, (y) superpriority claims and liens, and (z) the other protections set forth in this Interim Order.

E.    Use of Proceeds of the DIP Facility.  As a condition to entry into the DIP Credit Agreement and the extension of credit under the DIP Facility, the DIP Lender requires and the Debtor has agreed that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Documents, to (i) refinance the Prepetition Credit Facility and (ii) finance any and all working capital needs and for any other general corporate purposes.

F.    Section 506(c).  In light of the DIP Lender's agreement to fund the DIP Facility, the DIP Lender is entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

G.    Business Judgment; Good Faith of the DIP Lender.  The terms of the DIP Documents and this Interim Order are fair, just, and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the DIP Documents and this Interim Order have been negotiated in good faith and at arms' length between the Debtor, the DIP Lender, and the Guarantor (as defined in the DIP Credit Agreement), with all parties represented by counsel.  All of the Debtor's "Obligations" (as defined in the DIP Credit Agreement, collectively, the "DIP Obligations") shall be deemed to have been extended by the DIP Lender in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

H.    <u>Good Cause; Immediate Entry</u>.  The relief requested in the DIP Motion is necessary, essential, and appropriate, and is in the best interests of, and will benefit, the Debtor and its estate, creditors, and other parties in interest, as its implementation will, <u>inter alia</u>, provide the Debtor with the necessary liquidity to refinance the Prepetition Credit Facility and avoid immediate and irreparable harm to the Debtor and its estate, creditors, other parties in interest, business, and assets, caused by the potential foreclosure on the Debtor's assets by the Prepetition Lender and permit the Debtor to continue operating its business while pursuing confirmation of a chapter 11 plan of reorganization.

Based upon the foregoing findings of fact, acknowledgements, and conclusions of law, the Motion and the record made before this Court at the Hearing, and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.    <u>DIP Facility Approved</u>.  The DIP Motion is granted and the DIP Facility is authorized and approved, subject to the terms and conditions set forth in this Interim Order.

2.    <u>Objections Overruled</u>.  All objections to the DIP Facility or entry of this Interim Order, to the extent not withdrawn or resolved, are hereby overruled.

**DIP Facility Authorization**

3.    <u>Authorization of the DIP Financing and Payment of Fees</u>.  The Debtor is expressly and immediately authorized, empowered, and directed to execute and deliver the DIP Documents and to incur and to perform all the obligations arising thereunder (the "<u>DIP Obligations</u>") in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens (as defined below) described in, and provided for by, this Interim Order and the DIP Documents. The Debtor is hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest,

fees, expenses, reimbursement obligations, and other amounts described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, commitment fees and exit fees, whether or not the transactions contemplated hereby are consummated, as provided for in the DIP Credit Agreement and the DIP Documents.  Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms.   Notwithstanding anything herein or in the Loan Documents to the contrary, any obligation of the Lender to provide the DIP Facility is subject to and conditioned upon, among other things, the Lender obtaining all required internal approvals to enter into the DIP Facility.

4.    <u>Authorization to Borrow</u>.  Immediately upon entry of this Interim Order, subject to the terms and conditions set forth in the DIP Documents, the DIP Facility, and this Interim Order, and to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to borrow money under the DIP Facility, consisting of a $40,500,000 single draw term loan facility.

5.    <u>Use of DIP Facility Proceeds</u>.  Immediately upon entry of this Interim Order, the Debtor and the Receiver (as defined in the Prior Cash Collateral Order[4]) are authorized to use the proceeds of the DIP Facility only for the purposes specifically set forth in, and subject to the terms and conditions of, this Interim Order and the DIP Documents, including, without limitation, (a) the payment in full of all obligations under the Prepetition Credit Facility (as set forth below), (b) the payment in full of all interest, fees, and expenses payable under the DIP Documents, including, without limitation, the Commitment Fee (as defined in the DIP Credit Agreement), (c) the funding of

---

[4]    "<u>Prior Cash Collateral Order</u>" means the *Order Granting Debtor's Emergency Motion for Entry of Order, Pursuant to Sections 105(a), 362, 363, 365, and 543(d) of the Bankruptcy Code, Bankruptcy Rules 4001, 6003, 6004, and 9019, and Local Bankruptcy Rules 2081-1, 4001-2, and 9075-1 (I) Approving Stipulation with U.S. Bank National Association, (II) Authorizing Assumption of Executory Contracts and Unexpired Leases, (III) Excusing Receiver's Compliance with Section 543(d) and (IV) Authorizing Use of Cash Collateral, as Amended by the Supplements to Motion Filed January 12, 2015 and January 16, 2015* [Docket No. 101].

the Initial TI/LC Deposit (as defined in the DIP Credit Agreement), and (d) the payment of amounts approved by other orders of this Court. The Debtor and Receiver shall be authorized to use Cash Collateral in accordance with the Budget attached hereto as Exhibit 2. The Debtor's use of the Cash Collateral shall be subject to the terms and conditions of this Interim Order and the DIP Documents, and the terms of the Court's Prior Cash Collateral Order governing the use of Cash Collateral shall no longer apply.

6. <u>Repayment of the Prepetition Credit Facility</u>. The Debtor is hereby authorized and directed to use proceeds of the DIP Facility to, immediately upon entry of this Interim Order, pay in full all amounts owed to the Prepetition Lender under the Prepetition Credit Facility. Upon payment in full of the Prepetition Credit Facility, any and all liens on and security interests in all of the DIP Collateral in favor of the Prepetition Lender shall be released, extinguished, discharged, fully satisfied, and of no further force or effect. The Debtor is hereby authorized and directed, once the Prepetition Credit Facility has been paid in full, to file any and all termination statements or other similar instruments evidencing the termination of the all liens on and security interests in the DIP Collateral.

7. <u>DIP Obligations</u>. The DIP Obligations shall be enforceable against the Debtor, its estate, and any successors thereto, including, without limitation, any trustee appointed in the Case, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>").

8. <u>DIP Liens</u>. To secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), and 364(c)(3) of the Bankruptcy Code, the DIP Lender is hereby granted the following continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests and liens (all property

identified in clauses (a) and (b) being collectively referred to as the "DIP Collateral" and all such

liens and security interests granted to the DIP Lender, pursuant to this Interim Order and the DIP

Documents, the "DIP Liens"):

   (a)  First Lien on Unencumbered Property. Pursuant to section 364(c)(2) of the

Bankruptcy Code, a first-priority, senior security interest in and Lien upon all pre- and post-petition

property of the Borrower, whether existing on the Petition Date or thereafter created, acquired or

arising, whether real or personal, tangible or intangible, wherever located, that, on or as of the

Petition Date, was not subject to valid, perfected and non-avoidable Liens or was not subject to

Liens perfected subsequent to the Petition Date the priority and perfection of which relates back to a

date prior to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and, to the

extent applicable, section 362(b)(18) of the Bankruptcy Code, including, without limitation, (i) all

cash, Cash Equivalents, and Cash Collateral of the Borrower, (ii) all personal property of the

Borrower, whether tangible or intangible, including, without limitation, all accounts receivable,

books and records, contract rights, inventory, deposit accounts, equipment, fixtures, patents,

copyrights, trademarks, trade names and other intellectual property, goods, general intangibles,

chattel paper, instruments, promissory notes, drafts and documents, investments, investment

property, the Borrower's equity interest in any other Persons (including, without limitation,

Subsidiaries and/or Affiliates), securities, commercial tort claims, instruments, letters of credit and

rights under letters of credit, and life insurance policies, together with the income, products and

proceeds thereof, and (iii) all of the Borrower's interest in any real property, including, without

limitation, the Land and the buildings, improvements, fixtures and structures situated thereon,

leasehold interests, and the income, products and proceeds of the foregoing (all such property

described in subclauses (i), (ii), and (iii) of this clause (a), the "Unencumbered Property"). The

Unencumbered Property shall exclude the Debtor's claims and causes of action under chapter 5 of

9

the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively,

"Avoidance Actions"), but, subject only to, and effective upon, entry of the Final Order, shall

include any proceeds or property recovered, unencumbered, or otherwise the subject of successful

Avoidance Actions, whether by judgment, settlement, or otherwise.

        (b)       Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the

Bankruptcy Code, a security interest in and Lien upon all pre- and post-petition property of the

Borrower (other than the property described in clause (a) of this Paragraph 8, as to which property

the Liens and security interests granted to the Lender are as described in such clause (a)), together

with the income, products and proceeds thereof, whether existing on the Petition Date or thereafter

created, acquired or arising, whether real or personal, tangible or intangible, wherever located, that is

subject to valid, perfected and non-avoidable Liens in existence immediately prior to the Petition

Date or to valid and non-avoidable Liens in existence immediately prior to the Petition Date that are

perfected subsequent to the Petition Date the priority and perfection of which relates back to a date

prior to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and, to the extent

applicable, section 362(b)(18) of the Bankruptcy Code, including, without limitation, (i) all cash,

Cash Equivalents, and Cash Collateral of the Borrower, (ii) all personal property of the Borrower,

whether tangible or intangible, including, without limitation, all accounts receivable, books and

records, contract rights, inventory, deposit accounts, equipment, fixtures, patents, copyrights,

trademarks, trade names and other intellectual property, goods, general intangibles, chattel paper,

instruments, promissory notes, drafts and documents, investments, investment property, the

Borrower's equity interest in any other Persons (including, without limitation, Subsidiaries and/or

Affiliates), securities, commercial tort claims, instruments, letters of credit and rights under letters of

credit, and life insurance policies, together with the income, products and proceeds thereof, and

(iii) all of the Borrower's interest in any real property, including, without limitation, the buildings,

improvements, fixtures and structures situated thereon, leasehold interests, and the income, products and proceeds of the foregoing, which security interests and Liens granted to the Lender shall be junior in priority to such valid, perfected and non-avoidable Liens.

9.    <u>DIP Lien Priority</u>.    The DIP Liens are valid, binding, continuing, automatically perfected, non-avoidable, and senior in priority with respect to any of the DIP Collateral, except that the DIP Liens shall be junior only to (a) the Prior Liens (with respect to each such Prior Lien, only to the extent, if any, that such Prior Lien is non-avoidable and has priority over the DIP Liens under applicable law) and (b) the rights of LCS Constructors, Inc., a California corporation ("<u>LCS</u>") to certain amounts payable under the LCS Settlement pursuant to and on the terms set forth in Section 6 of the LCS Settlement.  For purposes of this Interim Order, it shall be an Event of Default if, other than as set forth herein, the DIP Liens shall be made subject to, or <u>pari passu</u> with, any lien or security interest heretofore or hereinafter granted in the Case or any Successor Cases, upon termination of the Debtor's exclusive periods under section 1121 of the Bankruptcy Code, upon the conversion of the Case to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Case or any Successor Cases.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be <u>pari passu</u> with or senior to the DIP Liens.

10.    <u>DIP Superpriority Claims</u>.

(a)    Upon entry of this Interim Order, the DIP Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in the Case and any Successor Cases (collectively, the "<u>DIP Superpriority Claims</u>") for all DIP Obligations:  (i) except as set forth herein, with priority over any and all administrative expense claims, diminution claims, unsecured claims, and all other claims against the Debtor or its estate in the Case and any Successor Cases, now existing or hereafter arising, of any kind or nature

whatsoever, including, without limitation, administrative expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtor and all proceeds thereof; and (ii) which shall at all times be senior to the rights of the Debtor and its estate, and any successor trustee or other estate representative to the extent permitted by law; provided that the DIP Superpriority Claim shall be junior, subject, and subordinate in all respects to LCS's rights to certain amounts payable under the LCS Settlement pursuant to and on the terms set forth in Section 6 of the LCS Settlement.

11.    No Obligation to Extend Credit.    The DIP Lender shall have no obligation to make any loan under the DIP Documents unless all of the conditions precedent to the making of such loan under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Lender.

**Provisions Common to DIP Financing**

12.    Amendments of the DIP Documents.    The Debtor is hereby authorized to implement, in accordance with the terms of the DIP Documents, (a) any nonmaterial modifications of the DIP Documents without further order of the Court, and (b) any other modifications to the DIP Documents, provided, however, that subject to entry of the Final Order, notice of any material modification or amendment to the DIP Documents shall be provided to the U.S. Trustee, who shall have five (5) business days from the date of such notice within which to object, in writing, to such modification or amendment.    If the U.S. Trustee timely objects to any material modification or amendment to the DIP Documents, such modification or amendment shall only be permitted

pursuant to an order of the Court.  The foregoing shall be without prejudice to the Debtor's right to seek approval from the Court of a material modification on an expedited basis.

13.    <u>Modification of the Automatic Stay</u>.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to (a) permit the Debtor to grant the DIP Liens and the DIP Superpriority Claims, (b) permit the Debtor to perform such acts as the DIP Lender may request in its sole discretion to assure the perfection and priority of the liens granted herein, (c) permit the Debtor to incur all liabilities and obligations to the DIP Lender under the DIP Documents, the DIP Facility, and this Interim Order, and (d) authorize the Debtor to make payments, and the DIP Lender to retain and apply payments made, in accordance with the terms of this Interim Order.

14.    <u>Perfection of DIP Liens</u>.    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including, without limitation, the DIP Liens, without the necessity of filing or recording any financing statement, patent filing, trademark filing, copyright filing, mortgage, notice of lien, or other instrument or document (collectively, "<u>Perfection Documents</u>"), which may otherwise be required under the law or regulation of any jurisdiction, or the taking possession of, or control over, assets, or the taking of any other action (including, for the avoidance of doubt and without limitation, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Lender to the priorities granted herein.  Notwithstanding the foregoing, the DIP Lender is authorized, but not required, to file, as it in its sole discretion deems necessary, such Perfection Documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens, and all such Perfection Documents shall be deemed to have been filed or recorded as of the Petition Date; <u>provided</u>, <u>however</u>, that no such filing or recordation

shall be necessary or required in order to create or perfect the DIP Liens. The Debtor is authorized and directed to execute and deliver promptly upon demand to the DIP Lender all such Perfection Documents as the DIP Lender may reasonably request. The DIP Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such Perfection Documents. In furtherance of the foregoing and without further approval of the Court, the Debtor is authorized and directed to do and perform all acts to make, execute, and deliver all instruments and documents and to pay all fees that may be reasonably required or necessary for the Debtor's performance hereunder.

15.    Proceeds of Subsequent Financing.  If the Debtor, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in the Case or any Successor Cases, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code or in violation of the DIP Documents at any time prior to such time as the DIP Obligations have been indefeasibly paid in full, in cash, including, without limitation, subsequent to the confirmation of any plan with respect to any or all of the Debtor and the Debtor's estate, and such facilities are secured by any DIP Collateral, then cash proceeds derived from such credit or debt shall be used to the extent necessary to indefeasibly repay in full, in cash the DIP Obligations; provided, however, that the foregoing shall not apply to the exit financing facility to be provided by the Lender, as contemplated under and evidenced in the DIP Documents.

16.    Maintenance of DIP Collateral.  Until such time as all DIP Obligations have been indefeasibly paid in full, in cash, the Debtor shall (a) maintain and insure the DIP Collateral in amounts, for the risks, and by the entities as required under the DIP Documents and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court, to which the DIP Lender has first agreed, or as otherwise required by the DIP Documents.

17.    Disposition of DIP Collateral; Rights of DIP Lender.  The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral other than as permitted in the DIP Documents without the prior written consent of the DIP Lender as required under the DIP Documents (and, no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or an order of the Court).

18.    DIP Termination Date.  On the DIP Termination Date (as defined below), (a) the DIP Obligations shall be immediately due and payable and (b) unless the DIP Obligations have been indefeasibly paid in full, in cash, all authority to use the DIP Collateral, including, without limitation, Cash Collateral, shall automatically cease.  For purposes of this Interim Order, the "DIP Termination Date" shall mean (x) the Maturity Date as defined in the DIP Credit Agreement, and (y) to the extent an Event of Default occurs, the date of the end of the Remedies Notice Period (as defined below).

19.    Events of Default.  The occurrence of an "Event of Default" under the DIP Documents shall constitute an Event of Default under this Interim Order, unless waived in writing by the DIP Lender.

20.    Rights and Remedies Upon Event of Default.  Upon the occurrence of an Event of Default and following the giving of five calendar days' notice to the Debtor (such period, the "Remedies Notice Period"), the DIP Lender may exercise all rights and remedies provided for in the DIP Documents and may declare (a) all DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtor, and (b) the termination of the DIP Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations.  During the Remedies Notice Period, the Debtor may continue to use the DIP Collateral, including, without limitation, Cash Collateral, in the ordinary course of business, consistent with past practices, but may

not enter into, or seek approval of, any transactions or arrangements (including, without limitation, the incurrence of indebtedness or liens, investments, restricted payments, asset sales, or transactions with non-Debtor affiliates) that are not in the ordinary course of business.  Unless the Court orders otherwise during the Remedies Notice Period, at the end of the Remedies Notice Period, (x) the Debtor shall no longer have the right to use or seek to use the DIP Collateral, including, without limitation, Cash Collateral, (y) the automatic stay pursuant to section 362 of the Bankruptcy Code, as to the DIP Lender, shall be automatically terminated without further notice to, or order of, the Court, and (z) the DIP Lender shall be permitted to exercise all rights against the DIP Collateral in accordance with the DIP Documents and this Interim Order, and shall be permitted to satisfy the DIP Obligations, without further order or application or motion to the Court and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code.  Notwithstanding anything herein to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder.  During the Remedies Notice Period, any party in interest shall be entitled to seek an emergency hearing with the Court solely for the purpose of contesting whether an Event of Default has occurred and/or is continuing, and the Debtor waives its right to, and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Lender set forth in this Interim Order or the DIP Documents.  The delay or failure to exercise rights and remedies under this Interim Order or the DIP Documents by the DIP Lender shall not constitute a waiver of such DIP Lender's rights thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents.

21.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code</u>.  Based on the findings set forth in this Interim Order and the record made during the Hearing, and in accordance with

section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of the Court or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any liens or claims granted to the DIP Lender hereunder arising prior to the effective date of any such modification, amendment, or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including, without limitation, entitlement to all rights, remedies, privileges, and benefits granted herein.

22.    <u>DIP and Other Expenses</u>.    The Debtor is authorized and directed to reimburse, within ten (10) calendar days of written demand, the DIP Lender for its reasonable and documented out-of-pocket expenses incurred in connection with the negotiation, documentation, syndication, and administration of the DIP Facility, any amendments or waivers with respect thereto, any Event of Default in respect of the DIP Facility, and any exercise of remedies in respect thereof (including, without limitation, reasonable and documented out-of-pocket fees, charges, and disbursements of legal counsel, financial advisors, and third-party appraisers and consultants advising the DIP Lender incurred in connection with the DIP Lender's participation in the Case).   Payment of all such fees and expenses shall not be subject to allowance by the Court.

23.    <u>No Proofs of Claim</u>.    The DIP Lender will not be required to file proofs of claim in the Case or any Successor Cases for any claim allowed herein.   Any order entered by the Court in relation to the establishment of a bar date in the Case or any Successor Cases shall not apply to the DIP Lender.

24.    <u>Rights of Access and Information</u>.    Without limiting the rights of access and information afforded the DIP Lender under the DIP Documents, the Debtor shall be, and hereby is, required to afford representatives, agents, and/or employees of the DIP Lender reasonable access to the Debtor's premises and its books and records in accordance with the DIP Documents and shall

17

reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtor shall authorize its independent certified public accountants, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the DIP Lender all such information as may be reasonably requested with respect to the business, results of operations, and financial condition of the Debtor.

25. <u>Limitations on the DIP Facility and the DIP Collateral</u>. Notwithstanding anything herein to the contrary, no portion of the proceeds of the DIP Facility or the DIP Collateral shall be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person in connection with (a) preventing, hindering, or delaying any of the DIP Lender's enforcement or realization upon any of the Collateral once an Event of Default has occurred and after the Remedies Notice Period, (b) objecting or challenging or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, or any other rights or interests of the DIP Lender, or (c) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the DIP Lender.

26. <u>Release</u>. The Debtor hereby releases and discharges the DIP Lender, together with its affiliates, agents, attorneys, officers, directors, managers, and employees (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the DIP Facility or the DIP Documents, any aspect of the relationship between the Debtor, on the one hand, and any or all of the Released Parties, on the other hand, relating to any of DIP Documents or any transaction contemplated thereby, or any other acts or omissions by any or all of the Released Parties in connection with any of the DIP Documents or their relationship with such Debtor or any affiliate thereof relating to any of the DIP Documents or any transaction contemplated thereby.

27.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

28.    <u>Receiver Bound</u>.  The receiver currently exercising a limited receivership over certain the Debtor's property shall be bound by the terms of this Interim Order in the discharge of, but solely to the extent of, the duties of such receivership as if the receiver were the Debtor.

29.    <u>Section 506(c) Claims</u>.  No costs or expenses of administration of the Cases or any future proceeding that may result therefrom, which have been or may be incurred in the Cases at any time, shall be charged against the DIP Lender or any of its claims or the DIP Collateral, pursuant to section 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender.

30.    <u>No Marshaling/Application of Proceeds</u>.  The DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and proceeds shall be received and applied pursuant to the terms of the DIP Documents notwithstanding any other agreement or provision to the contrary, <u>provided</u>, <u>however</u>, that nothing herein shall impair the rights of the DIP Lender with respect to the DIP Collateral.

31.    <u>Discharge Waiver</u>.  The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless (a) such plan of reorganization complies with the requirements of the DIP Documents or (b) the DIP Obligations have been indefeasibly paid in full, in cash, on or before the effective date of a confirmed plan of reorganization or liquidation.  The Debtor shall not propose or support any plan of reorganization or liquidation, sale of all or substantially all of the Debtor' assets, or entry of any confirmation order or sale order unless any such plan of reorganization or

liquidation, sale, or confirmation order (a) complies with the requirements of the DIP Documents or (b) provides that the DIP Obligations shall be indefeasibly paid in full, in cash, on or prior to the earlier to occur of the effective date of any such plan of reorganization or liquidation or sale and the DIP Termination Date, including, for the avoidance of doubt and without limitation, with funds received under the the exit financing facility to be provided by the Lender, as contemplated under and evidenced in the DIP Documents.

32.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Lender's right to seek any other or supplemental relief in respect of the Debtor; (b) any of the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request further modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Case or Successor Cases, conversion of the Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek to terminate the Debtor's exclusive periods under section 1121 of the Bankruptcy Code, or (iv) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender.

33.    <u>No Waiver by Failure To Seek Relief</u>.  The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Lender.

34.    <u>Binding Effect; Successors and Assigns</u>.  The DIP Documents and the provisions of this Interim Order, including, without limitation, all findings herein, shall be binding upon all parties in interest in the Case, including, without limitation, the DIP Lender, the Prepetition Lender, the

Guarantor, and the Debtor and their respective successors and assigns (including, without limitation, any chapter 7 or chapter 11 trustee hereinafter appointed for the estate of any of the Debtor) and shall inure to the benefit of the DIP Lender and the Debtor and their respective successors and assigns; provided, however, that the DIP Lender shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtor.    In determining to enter into the DIP Credit Agreement, in extending the DIP Facility, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Lender (a) shall not be deemed to be in control of the operations of any of the Debtor and (b) shall not owe any fiduciary duty to any of the Debtor, its creditors, or its estate.

35.    No Modification of Interim Order.  Unless and until the DIP Obligations have been indefeasibly paid in full, in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), an Event of Default shall occur if the Debtor seeks or consents to, directly or indirectly, or if there is entered:  (a) without the prior written consent of the DIP Lender, (i) any modification, stay, vacatur, or amendment to this Interim Order, (ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), 506(c), or 507(b) of the Bankruptcy Code in the Case or Successor Cases, equal or superior to the DIP Superpriority Claims, or (iii) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; (b) without the prior written consent of the DIP Lender, an order allowing use of the DIP Collateral, including, without limitation, Cash Collateral; (c) an order converting or dismissing the Case; (d) an order appointing a chapter 11 trustee in the Case; (e) an order terminating the Debtor's exclusive periods under section 1121 of the Bankruptcy Code; or (f) an order appointing an examiner with expanded powers in the

21

1  Case.  No such consent shall be implied by any other action, inaction, or acquiescence of the DIP

2  Lender.

3        36.    Immediate Effect.  This Interim Order shall take effect immediately upon its entry,

4  and there shall be no stay of effectiveness of this Interim Order, whether pursuant to the Bankruptcy

5  Rules, the LBR, or otherwise.

6

7        37.    Survival.  Except as expressly contemplated by this Interim Order or expressly

8  ordered by further order of this Court, the provisions of this Interim Order and any actions taken

9  pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of

10  reorganization or liquidation in the Case; (b) converting the Case to a case under chapter 7 of the

11  Bankruptcy Code; (c) dismissing the Case or any Successor Cases; or (d) pursuant to which the

12  Court abstains from hearing the Case or Successor Cases.  The terms and provisions of this Interim

13  Order, including, without limitation, the claims, liens, security interests, and other protections

14  granted to the DIP Lender pursuant to this Interim Order and/or the DIP Documents,

15  notwithstanding the entry of any such order, shall continue in the Case, in any Successor Cases, or

16  following dismissal of the Case or any Successor Cases, and shall maintain their priority as provided

17  by this Interim Order until, in respect of the DIP Facility, all the DIP Obligations, pursuant to the

18  DIP Documents and this Interim Order, have been indefeasibly paid in full, in cash (such payment

19  being without prejudice to any terms or provisions contained in the DIP Facility which survive such

20  discharge by their terms).

21

22        38.    Interim Order Governs.  In the event of any inconsistency between the provisions of

23  this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

24

25        39.    Final Hearing.  The hearing to consider entry of the Final Order approving the Motion

26  shall be _____, 2015, at __:__ a.m./p.m. (prevailing Eastern time) (the "Final Hearing").  The

27  Debtor shall provide notice of the Final Hearing to: (a) the Office of the United States Trustee, Attn:

28

Kelly J. Morrison, Office of the United States Trustee, 915 Wilshire Blvd., Ste. 1850, Los Angeles, CA 90017; (b) Counsel for U.S. Bank, Sheppard Mullin Richter & Hampton LLP, 650 Town Center Drive, 4th Floor, Costa Mesa, CA 92626; (c) the Receiver, Stapleton Inc., Attn: David Stapleton, 515 South Flower Street, 36th Floor, Los Angeles, CA 90071; (d) the 20 largest unsecured creditors, and (e) all parties requesting special notice .  Any objections or responses to the Motion must be filed on or before _____, 2015, at [_]:00 p.m. (prevailing Pacific time).  If no objections are filed to the Motion, the Court may enter the Final Order without further notice or hearing.

40.    Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

EXHIBIT A
Page 57