1  IRELL & MANELLA LLP
   Alan J. Friedman (State Bar No. 132580)
2  afriedman@irell.com
   Kerri A. Lyman (State Bar No. 241615)
3  klyman@irell.com
   840 Newport Center Drive, Suite 400
4  Newport Beach, California 92660-6324

5  Telephone:     (949) 760-0991
   Facsimile:     (949) 760-5200
6
   Attorneys for AP-Long Beach Airport LLC
7

8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11               LOS ANGELES DIVISION

12  In re                          )  Case No. 2:14-BK-33372-VZ
                                    )
13  AP-LONG BEACH AIRPORT LLC, a    )
    Delaware limited liability company,  )  Chapter 11
14                                  )
                                    )  **ORDER CONFIRMING SECOND**
15                                  )  **AMENDED PLAN OF**
                                    )  **REORGANIZATION OF AP-LONG**
16          Debtor and Debtor-in-Possession.  )  **BEACH AIRPORT LLC, AS MODIFIED**
                                    )
17                                  )  **CONFIRMATION HEARING:**
                                    )  DATE:   June 25, 2015
18                                  )  TIME:   1:30 p.m.
                                    )  PLACE: Courtroom 1368
19                                  )
                                    )
20                                  )
                                    )
21                                  )
                                    )
22                                  )
                                    )
23  _____)

24

25

26

27

28

#3441132

FILED & ENTERED

JUL 02 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY walter      DEPUTY CLERK

1    On June 25, 2015, at 1:30 p.m., the Honorable Vincent P. Zurzolo, United States

2  Bankruptcy Court Judge, held the Confirmation Hearing[1] in Courtroom 1368, 255 East Temple

3  Street, Los Angeles, California to consider confirmation of the *Second Amended Disclosure*

4  *Statement* (the "Disclosure Statement") *and Plan of Reorganization for AP-Long Beach Airport*

5  *LLC* [Docket No. 193] (as modified herein, the "Plan") filed by AP-Long Beach Airport LLC,

6  debtor and debtor-in-possession (the "Debtor"), and plan co-proponent Donald G. Abbey ("Mr.

7  Abbey" and, together with the Debtor, the "Plan Proponents").    Appearances were made as

8  indicated in the recorded transcript of the Confirmation Hearing.

9    The Court considered the pleadings and documents filed by the Debtor in support of

10  confirmation of the Plan, including the:

11  • *Notice of Order: (1) Approving Disclosure Statement; (2) Approving Notice*
12    *Procedures; (3) Establishing Cure Procedures; and (4) Establishing Confirmation*
13    *Procedures and Deadlines* (the "Original Confirmation Notice") [Docket No. 170];

14  • *Declaration of Lori Gauthier Re: Service of Plan Packages* [Docket No. 171];

15  • *Notice of the Assumption of Certain Leases and Executory Contracts Under*
16    *Debtor's Second Amended Disclosure Statement and Plan* of Reorganization for
17    AP-Long Beach Airport LLC and Cure Amounts, if any, to be Paid in Connection
18    Therewith (the "Cure Notice") [Docket No. 172];

19  • *Notice of (I) Continued Hearing on Confirmation of the Plan of Reorganization for*
20    *AP-Long Beach Airport LLC and (II) Modified Related Deadlines* (the "Continued
21    Confirmation Hearing Notice" and, with the Original Confirmation Notice, the
22    "Confirmation Hearing Notices") [Docket No. 190];

23  • *Notice of Submission of [Solicitation Version] of Second Amended Disclosure*
24    *Statement and  Plan of Reorganization of AP-Long Beach Airport LLC* [Docket No.
25    193];

26

27
_____

28    [1]    Capitalized terms not otherwise defined in this Confirmation Order shall have the meanings
ascribed to them in the Plan.

1 of 31

1    • *Motion for Confirmation of the Second Amended Plan of Reorganization of AP-*
2    *Long Beach Airport LLC; Memorandum of Points and Authorities in Support*
3    *Thereof* (the ("Confirmation Motion") [Docket No. 195];

4    • *Declaration of Donald Abbey in Support of the Motion for Confirmation of the*
5    *Second Amended Plan of Reorganization for AP-Long Beach Airport LLC* (the
6    "Abbey Declaration") [Docket No. 196];

7    • *Declaration of David Stapleton in Support of the Motion for Confirmation of the*
8    *Second Amended Plan of Reorganization for AP-Long Beach Airport LLC* (the
9    "Stapleton Declaration") [Docket No. 197];

10    • *Declaration of Lori Gauthier Regarding Tabulation of Ballots Re:  Plan of*
11    *Reorganization for AP-Long Beach Airport LLC* (the "Ballot Analysis") [Docket
12    No. 198]; and

13    • *Supplement to Motion for Confirmation of the Second Amended Plan of*
14    *Reorganization of AP-Long Beach Airport LLC Setting Forth Non-Material*
15    *Modifications to Plan; Declaration of Alan J. Friedman in Support Thereof* (the
16    "Supplement") [Docket No. 205].

17    Based on the above and upon the arguments of counsel and any evidence presented at the

18 Confirmation Hearing, the Court hereby makes the following findings of fact and conclusions of

19 law:[2]

20    **FINDINGS OF FACT**

21    A.  Jurisdiction and Venue:  The Debtor commenced its Chapter 11 case (the "Chapter 11

22 Case") by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on

23 December 19, 2014.  The Debtor was and is qualified to be a debtor under section 109 of the

24 Bankruptcy Code.  This matter is a core proceeding over which the Court has jurisdiction pursuant

25 to 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and

26

27    [2]    This Confirmation Order constitutes the Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rules 7052 and 9014.  All such findings of fact shall constitute findings even if
28 stated as conclusions of law, and all such conclusions of law shall constitute conclusions of law even if
stated as findings of fact.

1    1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2) and the Court

2    has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions

3    of the Bankruptcy Code and should be confirmed.

4        B.  Disclosure Statement Order:  On April 28, 2015, the Court entered its order approving

5    the Disclosure Statement and establishing Plan solicitation and voting procedures (the "Disclosure

6    Statement Order") [Docket No. 169].  Pursuant to the Disclosure Statement Order, among other

7    things, the Court: (i) fixed May 29, 2015 at 5:00 p.m. (PDT) as the date and time by which all

8    ballots to accept or reject the Plan must have been completed and received, (ii) fixed June 4, 2015

9    at 5:00 p.m. (PDT) as the last day for creditors and other parties in interest to file objections to

10   confirmation of the Plan, (iii) fixed June 18, 2015 at 2:00 p.m. (PDT) as the date and time of the

11   hearing to consider confirmation of the Plan, and (iv) approved the form and manner of notice

12   with respect to the foregoing.  On May 22, 2015, the Debtor filed a *Stipulation to (I) Continue*

13   *Hearing on Confirmation of the Plan of Reorganization for AP-Long Beach Airport LLC and (II)*

14   *Modify Related Deadlines* (the "Stipulation") [Docket No. 186].  On May 22, 2015, the Court

15   entered its order approving the Stipulation and modifying plan related deadlines (the "Stipulated

16   Order") [Docket No. 188].  By the Stipulated Order, the Court (i) continued the hearing on

17   confirmation of the Plan to June 25, 2015 at 1:30 p.m., (ii) extended the deadline by which the

18   Debtor must file and serve its motion and memorandum in support of confirmation of the Plan,

19   and declarations in support thereto to May 28, 2015, (iii) extended the deadline for filing and

20   serving objections to confirmation of the Plan to June 11, 2015 at 5:00 p.m. (PDT), and (iv)

21   extended the deadline by which the Debtor must file and serve its reply in support of confirmation

22   of the Plan to June 18, 2015 at 5:00 p.m. (PDT).

23       C.  Notice and Due Process:  The Debtor provided notice of the Confirmation Hearing and

24   of the time fixed for filing objections to Plan confirmation, to all entities entitled to receive such

25   notice, as set forth in the Solicitation Procedures Order through the Confirmation Hearing Notices.

26   The Confirmation Hearing Notices fully and adequately described the requested relief; were

27   reasonable and appropriate; and complied in all regards with due process.  The Confirmation

28   Hearing Notices also complied with the applicable provisions of (1) the Bankruptcy Code; (2) the

Bankruptcy Rules, including Bankruptcy Rules 2002, 3017, 3018, and 3019; (3) the Local Rules of the United States Bankruptcy Court for the Central District of California; and (4) all relevant orders of this Court, including the Disclosure Statement Order.

D. <u>Solicitation</u>: The Debtor conducted its solicitation of acceptances or rejections of the Plan and related distribution and tabulation of ballots with respect to that solicitation in good faith. The solicitation, distribution and tabulation complied with the Solicitation Procedures Order; all applicable provisions of the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018); all applicable provisions of the Bankruptcy Code (including sections 1125, 1126 and 1127); and all other applicable laws, rules and regulations. As evidenced in the *Declaration of Lori Gauthier Re: Service of Plan Packages* [Docket No. 171], the Debtor has fully complied with each of the directives of the Disclosure Statement Order.

E. <u>Cure Notices</u>: The Debtor served the Cure Notice in compliance with the service requirements and procedures approved in the Disclosure Statement Order with respect to the assumption and rejection of unexpired leases and executory contracts. The Cure Notice provided sufficient notice and complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order and no other or further notice is or shall be required.

F. <u>Ballot Analysis</u>: The only class entitled to vote on the Plan was Class Four, which consists of Membership Interest of Abbey-Properties II LLC ("<u>APII</u>"). APII is the sole member of the Debtor. APII was sent a Class Four ballot. APII timely cast its ballot in acceptance of the Plan. As evidenced by the Ballot Analysis, Class Four has voted 100% to accept the Plan. Accordingly, pursuant to sections 1124 and 1126 of the Bankruptcy Code, the one Impaired Class entitled to vote on the Plan has voted to accept the Plan.

G. <u>Judicial Notice</u>: The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court and/or its duly appointed agent (the "<u>Docket</u>"), including, without limitation, all pleadings and other documents on file, all orders entered, and all evidence (that was not subsequently withdrawn) and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Chapter 11 Case.

H. <u>Burden of Proof</u>:  The Debtor has met its burden of proving the elements of section 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard in this Court.  The Court also finds that the Debtor has satisfied the elements of section 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

I.  <u>Compliance with the Requirements of Section 1129 of the Bankruptcy Code</u>:  As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying the requirements of section 1129 of the Bankruptcy Code.

1.  <u>Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code</u>.  The Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) of the Bankruptcy Code, including without limitation sections 1122 and 1123.

As required by sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, the Plan designates classes of claims and membership interests, other than administrative claims and priority tax claims.[3]  Claims are classified separately in Class One (Unsecured Claims), Class Two (Unsecured Claim of U.S. Bank with respect to rights, if any, arising under the U.S. Bank Agreement), and Class Three (Unsecured Claim of LCS with respect to rights arising under the LCS Settlement Agreement).  Membership Interests are classified separately in Class Four (Membership Interests in the Debtor).  As required by section 1122(a) of the Bankruptcy Code, each class of claims or membership interests contains only claims or membership interests that are substantially similar to the other claims or membership interests within that class.  Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

As required by section 1123(a)(2) of the Bankruptcy Code, the Plan specifies all classes of claims which are unimpaired under the Plan.  Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

---

[3] Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not required to be classified.

As required by section 1123(a)(3) of the Bankruptcy Code, the Plan specifies the treatment of all classes of claims or membership interests which are impaired under the Plan. Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

As required by section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each claim or membership interest within a particular class unless the holder of a particular claim or membership interest in such class has agreed to a less favorable treatment of its claim or membership interest. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

As required by section 1123(a)(5) of the Bankruptcy Code, various provisions of the Plan provide adequate and proper means for the implementation of the Plan. On or around the Effective Date, the following, among other actions, will occur to implement the Plan:

- The DIP Financing shall convert to the Exit Financing on the terms and conditions set forth in the Exit Financing Documents.

- On the Effective Date, all allowed administrative claims (except professional fees, which are subject to Court approval), priority claims, and general unsecured claims shall be paid in full, with interest.

- From and after the Effective Date, in accordance with the terms of the Plan and this Confirmation Order, the Reorganized Debtor shall perform all obligations under all executory contracts and unexpired leases assumed in accordance with the Plan.

- On the Effective Date, title to all assets, claims, causes of action, properties, and business operations of the Debtor and of its estate shall vest in the Reorganized Debtor, and thereafter, the Reorganized Debtor shall own and retain such assets free and clear of all liens and claims, except as expressly provided in the Plan.

- The Plan provides that APII's interests in the Debtor will be transferred to LB Hangar 3205 LLC ("LB Hangar"). APII shall be the sole member of LB Hangar and LB Hangar shall be the sole member of the Debtor. But for the insertion of LB Hanger into the ownership chain, all ownership and management of the Debtor shall remain the same.

1    Based on the foregoing, the Plan adequately describes the means for its implementation

2    and, accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

3    The Debtor is not a corporation so Section 1123(a)(6) of the Bankruptcy Code does not

4    apply.

5    As required by section 1123(a)(7) of the Bankruptcy Code, the Plan contains only

6    provisions that are consistent with the interests of creditors and equity security holders and with

7    public policy with respect to the manner of selection of any officer, director, or trustee under the

8    Plan and any successor to such officer, director, or trustee.  The Debtor is a limited liability

9    company and has disclosed the identity of the sole member post-confirmation.  The sole member

10   of the Debtor is APII.  Following confirmation of the Plan, APII's interests in the Debtor will be

11   transferred to LB Hangar.  APII shall be the sole member of LB Hangar and LB Hangar shall be

12   the sole member of the Debtor.    Accordingly, the Plan satisfies section 1123(a)(7) of the

13   Bankruptcy Code.

14   As required by section 1123(b) of the Bankruptcy Code, the Plan contains various

15   provisions that may be construed as discretionary but are not required for Confirmation under the

16   Bankruptcy Code.  Such discretionary provisions comply with section 1123(b) of the Bankruptcy

17   Doe and, as discussed in greater detail below, are not inconsistent in any way with the applicable

18   provisions of the Bankruptcy Code.  Accordingly, the requirements of section 1123(b) of the

19   Bankruptcy Code are satisfied.

20       2.    Section 1123(b)(2) – Compliance by the Plan Proponents with the

21   Applicable Provisions of the Bankruptcy Code.  The Debtor has complied with all applicable

22   provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code,

23   including without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy

24   Rules 3017, 3018 and 3019.  In particular –

25       a.  The Debtor is a proper debtor under section 109 of the Bankruptcy

26   Code.

27       b.  The Debtor and Mr. Abbey are proper plan proponents under section

28   1121 of the Bankruptcy Code.

1                  c.    The Court approved the Disclosure Statement as containing adequate

2    information as required by section 1125.

3                  d.    The procedures the Debtor used to transmit solicitation packages and

4    the procedures by which the ballot for acceptance or rejection of the Plan were solicited and

5    tabulated were fair and properly conducted and in accordance with sections 1125 and 1126 of the

6    Bankruptcy Code and Bankruptcy Rules 3017 and 3018.  Declarations of service regarding the

7    distribution of the solicitation packages have been filed with the Court.

8                  e.    The Debtor, Mr. Abbey (as plan co-proponent), and their employees,

9    agents and professionals, as applicable, have acted in "good faith," within the meaning of section

10    1125(e) of the Bankruptcy Code.

11       Accordingly, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy

12    Code and the solicitation requirements of section 1125.

13          3.    Section 1129(a)(3) – Proposal of Plan in Good Faith.  The Plan Proponents

14    have proposed the Plan in good faith and not by any means forbidden by law.  In determining that

15    the Plan has been proposed in good faith, the Court has examined the totality of the circumstances

16    surrounding the Chapter 11 Case, the Plan itself, and the process leading to its formation.  Based

17    thereon, the Court finds and concludes that the Plan has been proposed with the legitimate and

18    honest purpose of resolving the affairs of the Debtor and maximizing the returns to creditors.

19       Accordingly, the Plan satisfies section 1129(a)(3) of the Bankruptcy Code.

20          4.    Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as

21    Reasonable.  The Plan provides that any professional or other entity requesting professional fees

22    for services rendered before the Effective Date must file and serve an application for professional

23    services by no later than thirty (30) days after the Effective Date.  Payments to professionals will

24    only be made after this Court allows such fees and expenses, except as provided in the DIP

25    Financing Order with respect to the DIP Lender's professional fees and expenses.  Accordingly,

26    the procedures set forth in the Plan for the Court's review and ultimate determination of the fees

27    and expenses to be paid to professionals from the estate the Plan satisfies section 1129(a)(4) of the

28    Bankruptcy Code.

5.      Section 1129(a)(5) – Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of the Holders of Claims and Equity Interests against the Debtor and Public Policy.  The Reorganized Debtor will continue to be a limited liability company and will not have any officers or directors. The Debtor has disclosed in the Plan that the Reorganized Debtor's managing member will be LB Hangar.  The managing member of LB Hangar will be APII.  The managing member of APII will remain The Abbey Companies LLC ("ACLLC"), and the Chief Executive Officer of ACLLC will remain Mr. Abbey.  In addition, the Debtor has employed the Stapleton Group as the property manager for the Long Beach Property.  The Stapleton Group will also serve as the disbursing agent under the Plan.  Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

6.      Section 1129(a)(6) – Approval of Rate Changes.  The Debtor's business does not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after Confirmation.  Accordingly, Section 1129(a)(6) does not apply in the Chapter 11 Case.

7.      Section 1129(a)(7) – Best Interests of Holders of Claims and Equity Interests.  The Plan satisfies the "best interests" test of Section 1129(a)(7) of the Bankruptcy Code. Holders of claims in Class One will receive payment in full upon the Effective Date of the Plan, with interest from the Petition Date through the date of payment at the Federal Judgment Rate. See Plan, § IV.  In addition, the Plan provides that U.S. Bank (Class Two) and LCS (Class Three) shall retain their rights under their respective agreements with the Debtor.  Thus, Class One (Unsecured Claims), Class Two (Claim of U.S. Bank), and the Class Three (Claim of LCS) are unimpaired and are deemed to have accepted the Plan.  Class 4 (Membership Interest of APII) is the only impaired class under the Plan.  The Plan provides that APII's interest in the Debtor will be transferred to LB Hangar.  APII shall be the sole member of LB Hangar and LB Hangar shall be the sole member of the Debtor.  Therefore, although APII's rights with respect to the Debtor have been modified, APII will remain the ultimate owner of 100% of the Debtor.  APII has submitted its ballot accepting the Plan.  Accordingly, the requirements of section 1129(a)(7) are satisfied.

8. <u>Section 1129(a)(8) – Acceptance of the Plan by Each Impaired Class</u>.   As indicated in the Plan, the following Classes are unimpaired and conclusively presumed to have accepted the Plan:

| Class | Claimant | Status | Voting Right |
|---|---|---|---|
| Class One | Unsecured Creditors | Unimpaired | Deemed to Accept |
| Class Two | Unsecured Claim of U.S. Bank | Unimpaired | Deemed to Accept |
| Class Three | Unsecured Claim of LCS Constructors | Unimpaired | Deemed to Accept |

Accordingly, section 1129(a)(8) is satisfied as to the foregoing Classes.

As indicated in the Plan, the following class is impaired:

| Class | Claimant | Status | Voting Right |
|---|---|---|---|
| Class Four | Membership Interest of Abbey-Properties II LLC | Impaired | Entitled to Vote |

As indicated in the Ballot Analysis, Impaired Class 4 (Membership Interest of APII) has voted to accept the Plan.  As a result, section 1129(a)(8) is satisfied as to this Class.

9. <u>Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code</u>.   Section 1129(a)(9) contains provisions generally requiring payment in cash of administrative and non-tax priority claims and permitting the deferred payment of priority tax claims over a period not exceeding five years from the Petition Date.  Article IX of the Plan provides for the payment in full in cash of allowed administrative claims, unless the holder agrees to other treatment of the claim.  Payment of an allowed administrative claim shall occur on the later of the Plan's Effective Date, or the date on which the administrative claim is allowed.

1    With respect to priority tax claims entitled to priority under section 507(a)(8), Article IX of

2    the Plan provides that, except as otherwise agreed to by the parties, each holder of an allowed

3    priority tax claim against the Debtor shall receive, on the Effective Date, in full satisfaction,

4    release and discharge of such allowed priority tax claim, payment in full plus interest.

5    In addition, Article IX of the Plan provides that all allowed priority claims will be paid in

6    full on the Effective Date.

7    Accordingly, the Plan satisfies all of the requirements of section 1129(a)(9).

8    10.    Section 1129(a)(10) – Acceptance By At Least One Impaired Class.    As

9    indicated in the Ballot Analysis and reflected on the record at the Confirmation Hearing all of the

10    classes of claims under the Plan are unimpaired.    Since no class of claims is impaired under the

11    Plan, section 1129(a)(10) does not apply.

12    11.    Section 1129(a)(11) – Feasibility of the Plan.    Plan confirmation is not

13    likely to be followed by either the liquidation or need for further financial reorganization of the

14    Reorganized Debtor.    As a result of the DIP Financing and, as of the Effective Date, the Exit

15    Financing, the Debtor has sufficient funds to pay all allowed priority and general unsecured claims

16    in full, with interest, on the Effective Date.    The Debtor estimates that the total amount of all

17    allowed priority[4] and general unsecured claims to be paid on the Effective Date will be

18    approximately $105,000.    Pursuant to orders of the court, $131,690 has been irrevocably

19    committed for the sole purpose of paying these claims.    Thus, the Debtor will have sufficient

20    funds on the Effective Date to pay all allowed priority and unsecured claims in full, with interest.

21    Further, Mr. Abbey has committed to providing the Debtor with sufficient funds to pay all

22    professional claims in full.

23    Finally, as discussed in the Confirmation Motion, using the operational funding provided

24    by the Exit Financing will allow the Debtor's business to grow and will allow the Debtor to pay all

25    expenses on a going-forward basis.    The Debtor developed the Long Beach Property for a variety

26    of uses and tenants, including significant facilities for the City of Long Beach (the "City") and the

27    _____

28    [4] The priority claim of the Los Angeles County Treasurer and Tax Collector for the 2015-
2016 tax year will be paid in the ordinary course of business as it comes due.

U.S. Customs and Border Protection, a division of the Department of Homeland Security (the "CBP").  The space rented by the CBP is approximately 16.6% of the Long Beach Property.  The City also rents space at the Long Beach Property and currently occupies approximately 62.3% of the property.  Following the successful completion of its Chapter 11 case, the Debtor will continue to lease space in the Long Beach Property to the GSA and the City.  21.1% of the Long Beach Property is currently vacant.  Following confirmation of the Plan, the Debtor intends to locate tenants for the remainder of the Long Beach Property.  The debtor-in-possession financing entered into between the Debtor and the DIP Lender established a $3,000,000 reserve to pay for costs associated with entering into new tenant leases at the Long Beach Property, including costs for tenant improvements.  The Debtor anticipates that it will be able to lease the vacant portion of the Long Beach Property for approximately $1.25 NNN per square foot.

Based on the foregoing and other evidence, the Court finds that the Plan is feasible and is not likely to be followed by liquidation or the need for further reorganization.  Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

12.    <u>Section 1129(a)(12) – Payment of Bankruptcy Fees</u>.  In accordance with section 1129(a)(12) of the Bankruptcy Code, Article XIX.(k) of the Plan provides for the payment on the Effective Date of all fees payable under 28 U.S.C. § 1930.  Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

13.    <u>Section 1129(a)(13) – Retiree Benefits</u>.  The Debtor has no employees and no retirement plans.  Accordingly, Section 1129(a)(13) of the Bankruptcy Code, which addresses retirement plans, has no application to the Plan or the Chapter 11 Case.

14.    <u>Section 1129(a)(14) – Domestic Support Obligations</u>.  Section 1129(a)(14) of the Bankruptcy Code, which requires a debtor to pay domestic support obligations required to be paid by judicial or administrative order, has no application to the Plan or the Chapter 11 Case.

15.    <u>Section 1129(a)(15) – Distributions in a Case in Which the Debtor is an Individual</u>.  Section 1129(a)(15) of the Bankruptcy Code, which applies to cases in which the debtor is an individual and accordingly, has no application to the Plan or the Chapter 11 Case.

16.    Section 1129(a)(16) – Transfers in Accordance with Non-Bankruptcy Law. Section 1129(a)(16) of the Bankruptcy Code, which applies to only cases of nonprofit entities, has no application to the Plan or the Chapter 11 Case.

J.    Section 1129(c) – Only One Plan.  Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Case.  Accordingly, the Plan satisfies section 1129(c) of the Bankruptcy Code.

K.    Section 1129(d) – Principal Purpose of the Plan is not Avoidance of Taxes or the Securities Act.  The principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e), as amended (the "Securities Act"), and there has been no objection filed by any governmental unit asserting such avoidance.

L.    Executory Contracts and Unexpired Leases.  Article XVI of the Plan provides for the assumption of certain of the Debtor's executory contracts and unexpired leases.  Article XVI provides that all executory contracts and unexpired leases of the Debtor set forth on Exhibit "4" to the Plan shall be assumed pursuant to the provisions of section 365 and 1123 (the "Assumed Leases and Contracts").  Such assumed executory contracts and unexpired leases shall, as of the Effective Date, vest in the Reorganized Debtor.  Article XVI further provides that any and all unexpired leases and executory contracts that are not listed on Exhibit "4" to the Plan will be rejected pursuant to the Plan and the Confirmation Order effective on the Effective Date.

The Debtor has analyzed all of its executory contracts and unexpired leases and has determined, in its reasonable business judgment, that it is in the best interests of the Debtor to assume the Assumed Leases and Contracts and to reject all others (the "Rejected Leases and Contracts").

The Debtor's decision to reject the Rejected Leases and Contracts and to assume the Assumed Leases and Contracts represents a valid and well-considered exercise of the Debtor's business judgment, is necessary to implementation of the Plan, and is in the best interest of the Debtor, its estate and creditors.    Nothing herein is a waiver of any defenses, claims, or

counterclaims that the Debtor (or its successors) may have against any party to a Rejected Lease or Contract or an Assumed Lease or Contract.

M.  <u>Releases and Discharges</u>.  Each of the discharge, release, indemnification and exculpation provisions set forth in the Plan and this Confirmation Order is: (i) within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (ii) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) an integral element of the transactions incorporated into the Plan; (iv) conferring material benefit on, and is in the best interests of, the Debtor, its estate and creditors; (v) important to the overall objectives of the Plan to finally resolve all claims among or against the parties-in-interest in the Chapter 11 Case with respect to the Debtor, its organization, capitalization, operation and reorganization; and (vi) consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

The Debtor's release of any and all claims against the DIP Lender and its affiliates, agents, attorneys, officers, directors, managers, and employees related to any act or omission taking place on or before the Effective Date as set forth in Article XIX.(i) of the Plan represents a valid exercise of the Debtor's business judgment.  Pursuing any such claims against the DIP Lender (although the Debtor is unaware of any such claims) is not in the best interest of the various constituencies of the Debtor's estate.  The release set forth in Article XIX.(i) is fair, necessary, equitable, reasonable, and in the best interests of the Debtor's estate.

Article XIX.(e) of the Plan contains customary exculpation provisions establishing liability standards.  Article XIX.(f) of the Plan provides for an injunction implementing such exculpation and the release set forth in Article XIX.(i).  These provisions are appropriately tailored to protect the exculpated parties from inappropriate litigation and do not relieve any party of liability for gross negligence or willful misconduct.  The provisions of the Plan set forth in Article XIX.(e) and XIX.(f) are consistent with section 1125(e) and applicable Ninth Circuit law.

Accordingly, the Court finds that the Plan's release, exculpation and injunction provisions are necessary and appropriate under the circumstances.

N.    Retention of Claims.  The Plan provides for the retention of certain claims in accordance with section 1123(b)(3)(B).  In particular, the Plan provides that the cause of action listed in Article XIX.(i) shall be vested in, and prosecuted by, the Reorganized Debtor.

O.    Plan Modification:  The Debtor has made certain plan modifications in order to resolve the potential objections of creditors (LCS Constructors, Inc. ("LCS") and Environ Architecture, Inc. ("Environ")) regarding language and/or payments under the Plan.

For the reasons discussed in the Supplement, these revisions to the Plan are non-material, do not (1) diminish the treatment of other creditors or interest holders under the Plan; (2) materially alter the Plan; or (3) bear upon its feasibility in such a way that additional disclosure or re-solicitation would be necessary.  No modifications of the Plan since the approval of the Disclosure Statement adversely changed the treatment under the Plan of the Claim of any creditor that voted to accept the Plan.  No modification of the Plan resulted in the Plan failing to meet the requirements of section 1122 or 1123.  Finally, no further or other disclosure was required by section 1125 because no other parties voting on the Plan were materially affected by any of the modifications to the Plan.  Accordingly, all Plan modifications complied in all respects with section 1127(a) and Bankruptcy Rule 3019(a).

P.    The Exhibits to the Plan.  Each of the Exhibits and the other agreements and documents implementing the Plan are approved and the parties to such Exhibits and other agreements and documents are authorized and directed to execute and deliver them in accordance with the Plan.

Q.    Satisfaction of Conditions to Confirmation.  Each of the conditions precedent to the entry of this Confirmation Order, as set forth in Article XIX.(b) of the Plan, has been satisfied or waived in accordance with the Plan.  Specifically, this Court finds, based on the statements of the parties in open court and otherwise, that:

a.    An order approving the Disclosure Statement has been entered in a form and substance acceptable to the Plan Proponents and DIP Lender;

b.    The Plan (including all exhibits) has been filed in form and substance acceptable to the Plan Proponents and DIP Lender; and

c.    The proposed Confirmation Order is in a form and substance acceptable to the Plan Proponents and DIP Lender.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**AA.    Confirmation of the Plan**

1.    The Plan is CONFIRMED.

2.    The Plan, including the exhibits attached thereto, is approved and confirmed in its entirety under section 1129, and any other applicable provisions, of the Bankruptcy Code.  The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on this Court's approval and authorization of, or the validity, binding effect and enforceability of, such provision; and each provision of the Plan is hereby expressly authorized and approved and each provision of the Plan shall have the same validity, binding effect and enforceability as every other provision of the Plan.

3.    All objections and responses to and statements and comments regarding the Plan, to the extent not already withdrawn, waived, or settled, and all reservation of rights included therein, shall be and hereby are, overruled on the merits.

4.    The terms of the Plan, all exhibits thereto, and all other relevant and necessary documents, shall be effective and binding as of the Effective Date of the Plan.  Notwithstanding the foregoing, if there is any direct conflict between the terms of the Plan or any other document and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

5.    The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

**BB.    Plan Modifications**

6.    Any modifications or amendments to the Plan since the solicitation, including those set forth in the Supplement, as disclosed in fillings with the Court or disclosed in open Court at or prior to the Confirmation Hearing, or set forth herein, are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.  Specifically, the Court makes the following modifications to the Plan:

a.      The chart set forth in Section IX.(a) (Description and Treatment of Claims:

Overview of Plan Payments) shall be replaced in whole with the following chart:

| Payment Recipient | Amount of each Payment (Total amount to be paid) | Payment Due Date | Source of Payment |
|---|---|---|---|
| Administrative Claims | Est. $4,875 | On or before the Effective Date | Funds held by Receiver |
| Professional Claim of Irell & Manella LLP | Est. $830,000 (amount outstanding as of Effective Date is estimated to be $450,000) | 30 days after the Effective Date (or as soon thereafter as such Professional Claims are approved by the Court) | $85,000 in Funds held in Retainer as of the Petition Date Funds currently being held in escrow in the amount of $176,000 ($300,000 has been approved by the DIP Lender and paid) Funds received from Mr. Abbey |
| Professional Claim of Stapleton Group | Est. $0 | Stapleton Group will be paid in the ordinary course of business once its employment application has been approved by the Court | Funds held by Receiver |
| Secured Tax Claim | $0 | Paid in full prior to the April 10, 2015 deadline | Funds held by Receiver |
| Unsecured Tax Claims | Est. $195,164.27 (including estimated property taxes for 2015/2016) | When due in the Ordinary Course of Business | Funds held by Receiver |
| Class One: Unsecured Creditors | Est. $105,000 plus interest from the Petition Date | Effective Date | Funds held by Receiver (If necessary, funds received from Mr. Abbey) |
| Class Two: Unsecured Claim of U.S. Bank | $0 | No Payment Necessary | No Payment Necessary |
| Class Three: Unsecured Claim of LCS Constructors | Est. $0 as of the Effective Date – Claim is with respect to rights arising under (i) the LCS Settlement Agreement, (ii) the New Work Contract, as defined in the LCS | No Payment Necessary | No Payment Necessary; LCS' sole recourse is to the GSA Lump Sum, which has been reduced to $565,000.00, that the Debtor assigned, conveyed and transferred to LCS |

| | | | |
|---|---|---|---|
| | Settlement Agreement (the "LCS New Work Contract"), (iii) the Supplemental Lease Agreement (SLA) No. 7 dated June 15, 2015 between AP-Long Beach Airport, LLC and the General Services Administration, Public Buildings Service (the "LCS SLA"); and (iv) the Second Amendment to New Work Agreement dated June 10, 2015 (the "Second Amendment"). | | pursuant to the LCS Settlement Agreement. The GSA will pay the $565,000.00 to LCS directly, once all of the terms and conditions required for the turnover of the GSA Lump Sum, as set forth in the LCS Settlement Agreement, the LCS New Work Contract, the LCS SLA, and the Second Amendment have been satisfied. |
| Class Four: Membership Interests of APII | No Payment Necessary | No Payment Necessary – Interest holder will receive 100% of the membership interests in a newly formed entity that will become the 100% holder of the Debtor's membership interests | No Payment Necessary |

b.    Section IX.(g) (Description and Treatment of Claims: Class One) shall be replaced in whole with the following:

CLASS ONE

Unsecured Claims

See Exhibit "1" for list of claims and whether they are disputed, contingent, or unliquidated as of June 17, 2015.

Total amount of allowed claims: estimated to be $105,000 plus interest from the Petition Date.

Total amount of payments to satisfy claims: $105,000 plus interest.

Interest rate: interest at the federal judgment rate as of the date of confirmation of the Plan.

Unimpaired

Payment date: payment of 100% of claims plus interest on the Effective Date.

3444386.3  06

- 19 -

1

2      c.      Section IX.(i) (Description and Treatment of Claims: Class Three) shall be

3  replaced in whole with the following:

4      CLASS THREE

5      Unsecured Claim of LCS with respect to rights arising under the LCS Settlement

6      Agreement, the LCS New Work Agreement, the LCS SLA, and the Second Amendment

7          Total amount of allowed claims: estimated to be $0 as of the Effective Date.

8          Unimpaired

9          Additional comments: LCS' sole recourse is to the GSA Lump Sum, which has

10         been reduced to $565,000.00, that the Debtor assigned, conveyed and transferred to

11         LCS pursuant to the LCS Settlement Agreement.  The GSA will pay the

12         $565,000.00 to LCS directly, once all of the terms and conditions required for the

13         turnover of the GSA Lump Sum, as set forth in the LCS Settlement Agreement, the

14         LCS New Work Contract, the LCS SLA, and the Second Amendment have been

15         satisfied.

16

17     d.      Section XII.(i) (Assets and Liabilities of the Estate: Summary) shall be

18  replaced in whole with the following:

19     The  fair  market  value  of  all  assets  equals  $43,000,000.    Total  liabilities  equal

20  $39,635,039.27 as follows: (1) $38,500,000 plus accrued interest owed to the DIP Lender

21  (pursuant to the terms of the DIP Financing, Mr. Abbey was required to make a payment

22  of $2,000,000 to be applied against the outstanding principal upon the closing of the DIP

23  Financing); (2) $830,000 owed on account of professional claims; (3) $195,164.27 owed

24  on account of unsecured tax claims; (4) $4,875 owed for UST fees; and (5) $105,000 owed

25  on account of unsecured claims.

26     e.      The amount of the unsecured claim of Environ Architecture, Inc. on Exhibit

27  1 and Exhibit 3 shall be $83,251.20.

28

f.    The total amount of all allowed claims set forth on Exhibit 3 shall be $39,635,470.57.

g.    Footnote 2 on Exhibit 3 shall be replaced in whole with the following:

This total does not include the claim of LCS Constructors, Inc. ("LCS") - No. 11 - as LCS's sole recourse is to the GSA Lump Sum (as defined in the Plan) of approximately $565,000.

7.    In addition, subject to any limitations contained in the Plan, the Reorganized Debtor may, upon order of the Court and with the consent of the DIP Lender as required under the Plan, amend or modify the Plan or remedy any defect or omission or reconcile any inconsistency in the Plan in such a manner as may be necessary to carry out the purpose and intent of the Plan.

## CC.    **Plan Classification Controlling**

8.    The terms of the Plan solely shall govern the classification of claims and membership interests for purposes of the distributions to be made thereunder.

## DD.    **Binding Effect**

9.    Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Confirmation Order, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to the Plan) and this Confirmation Order shall be binding on (i) the Debtor; (ii) its estate; (iii) the Reorganized Debtor; and (iv) all holders of claims against and membership interests in the Debtor, whether or not impaired under the Plan and whether or not, if impaired, such holders accepted the Plan.

## EE.    **Injunction**

10.    Except as otherwise expressly provided in the Plan, this Confirmation Order, or a separate order of the Court, all entities who have held, hold, or may hold claims against or membership interests in the Debtor that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor

with respect to any such claim or membership interest, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the Reorganized Debtor on account of any such claim or claim or membership interest, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Reorganized Debtor or against the property or interests in property of the Debtor or the Reorganized Debtor on account of any such claim or membership interest, and (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor or the Reorganized Debtor or against the property or interests in property of the Debtor or the Reorganized Debtor on account of any such claim or membership interest.

11.    Such injunction shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and its respective properties and interests in property.

**FF.    Vesting of Assets**

12.    Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, all property of the estate shall vest in the Reorganized Debtor, free and clear of all claims, liens, encumbrances, and membership interests.  From and after the Effective Date, the Reorganized Debtor may operate its business and use, acquire and dispose of property without supervision by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

13.    On or about the Effective Date, the Reorganized Debtor, and any authorized officers and agents thereof, shall be and hereby are authorized to execute and deliver each and all of the Plan, any exhibits thereto and this Confirmation Order, as well as execute, deliver, authorize the filing of, record, and/or issue any notes, intercreditor agreements, documents (including but not limited to, UCC financing statements, security agreements, mortgages, deeds of trusts or other security instruments or collateral documents), instruments, certificates, or agreements necessary or appropriate to give effect to the transactions contemplated thereby and/or grant, perfect, impose and continue liens and security interests upon each and all of the real and personal property described therein and intended to be encumbered thereby, and perform each and all of their respective obligations thereunder, in each case without further notice to or order of this Court, act

1  or action under applicable law, regulation, order or rule or the vote, consent, authorization, or

2  approval of any person or entity (other than as expressly required by any applicable document or

3  agreement), including but not limited to the extent that, under applicable non-bankruptcy law, any

4  of these actions otherwise would require the consent or approval of any other person or entity (as

5  such terms are defined in the Bankruptcy Code), all in accordance with the Plan and the

6  documentation, instruments, certificates and agreements entered into and/or delivered in

7  connection therewith.  The foregoing documents and agreements shall be the valid, binding and

8  enforceable obligations of the Reorganized Debtor concurrently with the respective execution and

9  delivery of each and every such document.  The liens and security interests granted and to be

10  granted by the Reorganized Debtor by the execution and delivery of the foregoing agreements and

11  documents and the entry of this Confirmation Order shall irrevocably be and be deemed perfected

12  on the Effective Date, subject only to such liens and security interests as may be expressly

13  permitted under the Plan and the documentation, instruments, certificates and agreements entered

14  into and/or delivered in connection therewith.  To effectuate these transactions, the Plan, the

15  authorized officers and agents of the Debtor and the Reorganized Debtor are hereby authorized —

16  without further notice, application to, or order of this Court — to execute, deliver, authorize the

17  filing of, file, or record any documents and to take any other actions that those agents may

18  determine to be necessary or desirable, regardless of whether such actions or documents are

19  specifically referred to in the Plan or this Confirmation Order.

20  **GG.    <u>Executory Contracts and Unexpired Leases</u>**

21       14.    The executory contracts and unexpired lease provisions of Article XVI of the Plan

22  shall be, and hereby are, approved.

23       15.    As of the Effective Date and upon the payment of any cure amounts (if applicable),

24  pursuant to Article XVI of the Plan, each of the Assumed Leases and Contracts is deemed

25  assumed by the Reorganized Debtor and shall be in full force and effect, except to the extent that

26  they have been modified consensually with the agreement of the parties thereto.  Each of the

27  Rejected Leases and Contracts is deemed rejected by the Debtor as of the Effective Date, and the

28  entry of this Confirmation Order by the Bankruptcy Court constitutes approval of each such

rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  All proofs of claim arising from the rejection of the Rejected Leases and Contracts ("Rejection Claims") must be filed within thirty (30) days after the Effective Date.  Any claims arising from the rejection of the Rejected Leases and Contracts for which a proof of claim is not timely filed will be forever barred from assertion against the Debtor or the Reorganized Debtor, its estate and property unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All Rejection Claims shall be subject to the discharge and permanent injunction set forth in Article XIX.

16.    Each rejection or assumption or assumption and assignment of an executory contract or unexpired lease pursuant to Article XVI of the Plan will be legal, valid and binding upon the Debtor, and all non-Debtor parties to such executory contract or unexpired lease, as applicable, all to the same extent as if such rejection or assumption had been effectuated pursuant to an appropriate order of the Bankruptcy Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.  Each of the executory contracts and unexpired leases to be rejected or assumed or assumed and assigned is deemed to be an executory contract or an unexpired lease, as applicable.

**HH.    Exit Financing Approved**

17.    The Exit Financing and the Exit Financing Documents are hereby approved and the Reorganized Debtor is authorized and directed to enter into the Exit Financing and the Exit Financing Documents.

18.    Pursuant to section 1142(b) of the Bankruptcy Code and without further action by this Court or by the shareholders, directors, members or partners of any of the Reorganized Debtor, the Reorganized Debtor is authorized to enter into the Exit Financing and the Exit Financing Documents, to perform all of its obligations thereunder and to execute and deliver all documents, agreements and instruments necessary or appropriate to enter into and perform all obligations under the Exit Financing and the Exit Financing Documents, and to take all other actions and execute, deliver, record and file all other such agreements, documents, instruments, financing statements, releases, applications, reports and any changes, additions and modifications thereto in connection with the consummation of the transactions contemplated by the Exit

Financing, including, without limitation, the making of such filings, or the recording of any security interests, as may be required by the Exit Financing and the Exit Financing Documents.

19.    Without in any way limiting the foregoing, in the event that any person or entity that has filed financing statements, mortgages, *lis pendens*, or other documents or agreements evidencing interests with respect to the Debtor or its assets shall not have delivered to the Debtor on or before the Effective Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens, claims or interests that such holder may have with respect to the Debtor or its assets or otherwise, then each of the Debtor, the Reorganized Debtor or any lender under the Exit Financing hereby is authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Reorganized Debtor's assets.

**II.    Matters Relating to Implementation of the Plan**

20.    Following the Effective Date, the Reorganized Debtor shall remain in existence, with all powers of a limited liability company under the law of the state governing its formation and may operate free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan (including, without limitation, all documentation, instruments, certificates and agreements entered into and/or delivered in connection therewith) and this Confirmation Order.

21.    Following the Effective Date, APII's interests in the Reorganized Debtor will be transferred to LB Hangar.  APII shall be the sole member of LB Hangar and LB Hangar shall be the sole member of the Reorganized Debtor.  On the Effective Date, the operation of Reorganized Debtor shall become the general responsibility of LB Hangar.

**JJ.    Disbursing Agent**

22.    David Stapleton shall serve as Disbursing Agent pursuant to the terms and conditions of the Plan, shall have all of the rights, powers and duties set forth in Article XV of the Plan, and shall make all distributions required under the Plan.

**KK.   Discharge, Release, Injunction, Exculpation and Indemnification**

23.     In light of all of the circumstances and the record in this Chapter 11 Case, including the evidence provided in the Plan, any supporting documentation, or at the Confirmation Hearing, all provisions and sections of Article XIX of the Plan shall be, and hereby are approved in their entirety as set forth therein.  Each of the discharge, release, injunction, and exculpation provisions provided under the Plan, including without limitation those set forth in Article XIX of the Plan, are hereby approved as being (i) within the jurisdiction of the Bankruptcy Court to approve under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (ii) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) an integral element of the transactions incorporated in the Plan; (iv) beneficial to, and in the best interests of, the Debtor, its estate and the holders of claims and membership interests against the Debtor; (v) critical to the overall objectives of the Plan; and (vi) consistent with sections 105, 1123, 1129 and all applicable provisions of the Bankruptcy Code.

**LL.   Continuation of the Automatic Stay**

24.     All injunctions or stays imposed during the Chapter 11 Case or contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms until the Effective Date.  As of the Effective Date, the stay imposed by section 362 of the Bankruptcy Code shall be dissolved and of no further force and effect, subject to the injunction set forth herein and in the Plan and/or sections 524 and 1141 of the Bankruptcy Code, except that nothing herein shall bar the filing of documents in connection with the Exit Financing or the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order.

**MM.   Retention of Jurisdiction**

25.     The Court shall, after the Effective Date, retain jurisdiction to the fullest extent permitted by applicable law.

**NN.   Payment of Statutory Fees**

26.     All outstanding fees payable pursuant to Section 1930 of title 28, United States Code shall be paid on the Effective Date.  Until such time as the Chapter 11 Case is closed, the

1    Reorganized Debtor shall pay all quarterly fees to the United States Trustee due from the

2    Reorganized Debtor and shall submit all required post-confirmation reports.

3    **OO.    Section 346 Exemption**

4          27.    Section 346 of the Bankruptcy Code shall apply to any taxes that may potentially

5    result from, or may be related to, the events, transactions and occurrences of the Chapter 11 Case,

6    and, in particular, pursuant to section 346(j) of the Bankruptcy Code, no state or local tax imposed

7    on, or measured by, income shall be imposed on the Debtor or the Reorganized Debtor, including,

8    but not limited to, franchise taxes to the extent that any such franchise taxes are measured by book

9    or taxable income of the Debtor or the Reorganized Debtor as result of the forgiveness or

10   discharge of indebtedness of the Debtor arising from the confirmation and consummation of the

11   Plan, including, but not limited to, undertaking the transactions contemplated by the Plan of the

12   Chapter 11 Case, or any provision of the Plan or this Confirmation Order.

13   **PP.    Preservation of Causes of Action**

14         28.    The Reorganized Debtor shall retain the right to pursue any and all causes of action

15   to the extent the Reorganized Debtor deems appropriate (under any theory of law or equity,

16   including, without limitation, the Bankruptcy Code and any applicable local, state, or federal law,

17   in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the

18   Case), to the extent not expressly released hereby or by prior or other order of this Court as set

19   forth in Article XIX.(i) of the Plan.  Except as expressly provided in the Plan or the Confirmation

20   Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or

21   relinquishment of any such rights.  Nothing contained in the Plan or the Confirmation Order shall

22   be deemed a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal

23   or equitable defense that the Debtor had immediately prior to the Petition Date that is not

24   specifically waived or relinquished by the Plan.  The Reorganized Debtor shall have, retain,

25   reserve and be entitled to assert all such claims, causes of action, rights of setoff and other legal

26   and equitable defenses that the Debtor had immediately prior to the Petition Date as if the Chapter

27   11 Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights

28

1  respecting any claim that are not specifically waived or relinquished by the Plan may be asserted

2  after the Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

3  **QQ.    Section 1146 Exemption**

4        29.    Section 1146(c) of the Bankruptcy Code shall apply on the terms set forth in

5  Article XIX.(t) of the Plan.

6  **RR.    References to Plan Provisions**

7        30.    The Plan is confirmed in its entirety and hereby incorporated into this Confirmation

8  Order by reference.  The failure specifically to include or to refer to any particular provision of the

9  Plan in this Confirmation Order shall not diminish or impair the effectiveness of any such

10  provision.

11  **SS.    Post-Confirmation Notices and Bar Dates**

12        a.    Notice of Entry of the Confirmation Order

13        31.    In accordance with Bankruptcy Rule 2002 and 3020(c), within twenty business

14  days of the date of entry of this Confirmation Order, the Debtor (or its agents) shall give notice of

15  the entry of this Confirmation Order by United States mail, first class postage prepaid, by hand, or

16  by overnight courier service to all parties having been served with the Notices of Confirmation

17  Hearing; provided, however, that no notice or service of any kind shall be required to be mailed or

18  made upon any person to whom the Debtor mailed a Notices of Confirmation Hearing, but

19  received such notice returned marked "undeliverable as addressed," "moved, left no forwarding

20  address" or "forwarding order expired," or similar reason, unless the Debtor has been informed in

21  writing by such person, or are otherwise aware, of that person's new address.

22        32.    Mailing of the notice of entry of the Confirmation Order in the time and manner set

23  forth in the preceding paragraph are good and sufficient under the particular circumstances and in

24  accordance with the requirements of Bankruptcy Rule 2002 and 3020(c), and no further notice is

25  necessary.

26

27

28

3444386.3  06

b.    Bar Date for Requests for Administrative Claims

33.    All requests for administrative expenses pursuant to section 503 of the Bankruptcy Code, except as otherwise set forth in subsection (c) below, must be filed with within thirty (30) days of the Effective Date.

34.    U.S. Bank National Association shall not be required to file a proof of or request payment of any administrative claim in order to preserve the same.  All claims of U.S. Bank National Association that were not released by the Bank Release Agreement (as defined in the Plan), whether administrative, pre-petition or otherwise, shall survive confirmation of the Plan and will pass through the Debtor's Chapter 11 Case unaffected and will not be discharged, released, exculpated, or enjoined or precluded from being asserted, nor will any exculpation of the Debtor or Mr. Abbey provided for in the Plan or this order exculpate the Debtor or Mr. Abbey from or otherwise affect any liability of the Debtor or Mr. Abbey for any claims (administrative, pre-petition, or otherwise) by U.S. Bank National Association that are not released by the Bank Release Agreement.

35.    The DIP Lender shall not be required to file a proof of or request for payment of any administrative claim in order to preserve the same.

36.    The notice of entry of the Confirmation Order shall conspicuously set forth the bar date for requests for administrative expenses, which shall constitute good and sufficient notice of the bar date and, in accordance with the requirements of Bankruptcy Rules 2002 and 3020, no further notice of the bar date is necessary.

c.    Final Fee Applications and Fee Application Bar Date

37.    Any professional seeking an allowance, pursuant to sections 327, 328, 330, 331, 503(b), 507(a)(1) and/or 1103 of the Bankruptcy Code, of (i) an administrative claim or (ii) final compensation or reimbursement of expenses incurred on or before the Effective Date for professional services rendered to the Reorganizing Debtor or in relation to the Chapter 11 Case ("Professional Fees and Expenses") shall file an application for allowance of such administrative claim or Professional Fees and Expenses (each, an "Application"), within thirty (30) days of the Effective Date; provided, however, that the DIP Lender's professional fees and expenses shall be

1  allowed and paid in accordance with the DIP Financing Order and shall not be subject to the

2  foregoing requirements in this paragraph.

3         38.    Each Application shall comply with the applicable provisions of the Bankruptcy

4  Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and shall set forth, among other

5  things, in reasonable detail: (i) the name and address of the applicant; (ii) the nature of the

6  Professional Fees and Expenses for which reimbursement is requested for all periods from the date

7  the particular applicant was retained through the Effective Date; (iii) the amount of the

8  Professional Fees and Expenses requested; (iv) the amounts of Professional Fees and Expenses

9  previously allowed by the Court, if any; and (v) the amount or amounts of payments made to date,

10  if any, by the Debtor to reduce such allowed amount.

11  **TT.**    **Non-Material Changes**

12         39.    Article XIX.(m) of the Plan shall govern post-confirmation Plan modifications.

13  **UU.**    **Authorization to Consummate**

14         40.    This Confirmation Order shall take effect immediately upon its entry, and there

15  shall be no stay of effectiveness of this Confirmation Order, whether pursuant to the Bankruptcy

16  Rules, including but not limited to Bankruptcy Rule 3020, the Local Bankruptcy Rules, including

17  but not limited to Local Bankruptcy Rule 3020-1, or otherwise.

18         41.    The Debtor is authorized to consummate the Plan at any time after the entry of this

19  Confirmation Order.

20  **VV.**    **Post-Confirmation Status Conference**

21         42.    A post-confirmation status conference will be held on January 21, 2016 at 9:30

22  a.m., before the Honorable Vincent P. Zurzolo, Courtroom 1368, 255 East Temple Street, Los

23  Angeles, California.  A status report must be filed no less than fourteen (14) days prior to the post-

24  confirmation status conference.  The status report will be served on the United States Trustee, the

25  20 largest unsecured creditors, and those parties who have requested special notice.

26

27

28

**WW.   Final Administration**

43.    As and when the Plan is fully administered, the Debtor shall move the Court, pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, for a final decree and order closing this Chapter 11 Case.

**XX.  Final Order**

44.    This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

# # # #

Date: July 2, 2015

Vincent P. Zurzolo
United States Bankruptcy Judge

3444386.3  06